LAND, Justice.
 

 On December 21, 1931, the defendants, Mrs. Amelia Bethel Carter, Glenn A. Carter, and Rex E. Carter, granted to plaintiff, Shell Petroleum Corporation, an oil, gas, and mineral lease on the west % of section 1, township 9 south, range 4 west, in the parish of Jefferson Davis, containing 327 acres in one continuous tract, and owned jointly by the Carters, the lessors.
 

 The royalty stipulated in the lease is % of the minerals produced and saved from the leased premises.
 

 It is admitted in the agreed statement of facts, signed December 2, 1935, “that Mrs. Amelia Bethel Carter, Glenn A. Carter, and Rex E. Carter are now the owners
 
 in indivisión
 
 of the entire West Half (W. %) of said Section 1, Township 9 South, Range 4 West, and were the owners thereof at the time of the granting of the lease to the Shell Petroleum Corporation and at the time of the various sales to the other defendants.” Tr. p. 76. (Italics ours.)
 

 The various sales to the other defendants referred to were assignments of certain portions of their royalties by the Carters, the lessors, and are as follows:
 

 (a) May 17, 1934, to C. O. Noble !4s royalty interest on S. W. % of the section.
 

 (b) May 17, 1934, to A. O. Fontenot %28 royalty interest on S. W. % of the section.
 

 
 *385
 
 (c) July 17, 1934, A. O. Fontenot sold
 
 Ye
 
 of Vi28 royalty interest in the S. W.
 
 Ya
 
 of the section to Gilbert Fontenot.
 

 (d) April 4, 1935, to Earl C. Miller, Celestin M. Fontenot, and James D. Norman
 
 Vi28
 
 royalty interest on the N. W.
 
 Ya
 
 of the section.
 

 Operating under this lease, the Shell Petroleum Corporation drilled upon and secured production from the
 
 S. W. Ya
 
 of section 1, township 9 south, range 4 west. There was no production on the N. W.
 
 Ya
 
 of this section. But defendants, Earl C. Miller, Celestin M. Fontenot, and James D. Norman, who had purchased royalty interests solely in the N. W.
 
 Ya
 
 °f the section, demanded, under paragraph 11 of the lease, that the Shell Petroleum Corporation pay them part of the royalty accruing from the production of oil from the S'.
 
 W. Ya
 
 of this section.
 

 Under this state of facts, the present proceeding was appropriately brought by the Shell Petroleum Corporation under Act No. 123 of 1922; the royalties in dispute were deposited in the registry of the lower court; and all parties claiming or having an interest in the fund were cited.
 

 The issue to be decided in the case is whether the purchasers of royalty interest, in the
 
 N. W. Ya
 
 of the section alone, have the right to participate in the royalty payable from production from the S'.
 
 W. Ya
 
 of the section.
 

 The decision of the lower court was adverse to this contention, of the purchasers of the royalty interests in the N. W.
 
 Ya
 
 of the section, that they had the right to participate in the royalty from the S. w. y4.
 

 Accordingly, judgment was rendered in the lower court, decreeing that defendant Charles O. Noble have and recover
 
 Yba
 
 royalty interest in the production from the S. W.
 
 Ya
 
 °f the section, and that he recover that proportionate amount from the funds now on deposit in the registry of the court.
 

 It was likewise decreed that the defendant A. O. Fontenot have and recover Yl28 royalty interest in the production from the S. W.
 
 Ya
 
 °f the section, less
 
 Ye.
 
 of the same payable to Gilbert Fontenot, his assignee, and a proportionate amount of the funds now on deposit in the registry of the court.
 

 It was further decreed that defendants Earl C. Miller, C. M. Fontenot, and James D. Norman recover no part of the royalty payable from production on the S. W.
 
 Ya
 
 °f the section; that defendants Rudolph F. Weichert, Arthur T. Jones, Wallace H. Adams, and J. O. Modisette take no part of the royalty produced from the S. W.
 
 Ya
 
 of the section; and that the costs be paid by Earl C. Miller, C. M. Fontenot, and James D. Norman, as their interests appear. Tr. p. 84.
 

 From this judgment the defendants James D. Norman, Earl C. Miller and Celestin M. Fontenot have prosecuted a devolutive appeal to this court.
 

 The defendants Rudolph F. Weichert, Arthur T. Jones, Wallace H. Adams, and James O. Modisette entered disclaimers in the lower court as to any interest, and the
 
 *387
 
 suit was dismissed as to them without cost. Tr. pp. 60-64 (inclusive).
 

 (1) At the outset, it may be well to remember that the defendants, the Carters, are mere joint owners and lessors of one continuous tract of land, which has not been partitioned between them. This tract has been leased by thein, in its entirety, to the Shell Petroleum Corporation. Nor have the owners and lessors assigned to the appellants the mineral lease on this tract, either in whole or in part, nor have they sold to the appellants the land, or any part of same, subject to the lease.
 

 The mere fact that the owners and lessors may have sold to some of the defendants undivided interests in royalty on the N. % of the 327-acre tract, and to other defendants similar interests on the S. % of the tract, cannot be construed reasonably as a division into two separate parts of the land in question, for the plain reason that the sale of an undivided interest in a royalty is neither the .sale of the land nor of the lease, as to the specific tract from which the royalty may be produced.
 

 It is clear, therefore, that this is not the case of a joint lease, in the proper sense of that term, under paragraph 11 of the lease entered into between the Carters and the Shell Petroleum Corporation. Here we have no owners of separate tracts of land entering into a joint lease, by pooling their individual holdings and stipulating that the royalty shall be divided between them in proportion to the ownership of the acreage pooled, if a producing oil well is brought in upon any one of the tracts included in the lease.
 

 The sale of the undivided interests in the royalty in this case amounts to nothing more or less than the limitation of the royalty to the N. % or to the S. % of the tract, to be participated in by the individuals purchasing the royalty to be produced from that particular tract. It is difficult to understand how the purchaser of an interest in a royalty to be produced from a particular tract, which he has selected as being more likely to produce oil than another tract, can claim, in a case of this kind, that he is also entitled to participate in the division of the royalty from another tract, when he has not purchased the royalty on that tract, and has not paid for it. Manifestly, an undivided interest in royalty on a 327-acre tract is more valuable than an undivided interest in royalty, limited to the N. % or the S. % of that tract, since the chance for striking oil is twice as great. Besides, it is not legally possible for this court to hold that a purchaser has title to something that he did not buy and did not pay for, and which the seller did not intend to sell, and did not, in fact, sell.
 

 As this is not a joint lease, it is not possible to divide the royalty, in proportion to the ownership of the acreage pooled; and, necessarily, the royalty must be divided according to the respective interests of the parties, and within the limitations of the terms of the respective contracts of purchase. These contracts constitute the law that the parties have made for themselves and they are bound thereby.
 

 For these reasons, we are not impressed with the contention of the appellants
 
 *389
 
 and the Carters that those acquiring a royalty on the
 
 S. W.
 
 *4
 
 alone,
 
 in reality, acquired
 
 but half of
 
 the interest specified in their deeds but that they did acquire
 
 a like interest in the N. W.
 
 *4, notwithstanding the fact that their deeds specifically described
 
 only the S. W. Vé-
 

 Such a construction as to the contracts of purchase of the royalties in this case is not borne out, in our opinion, by the particular phrase of paragraph 11 of the lease, upon which appellants and the Carters rely, and which reads as follows: “All royalties accruing hereunder shall be treated, as an entirety, such royalties shall at all times be divided among and paid to the owners thereof
 
 in proportions according to the acreage and/or interest owned by each,
 
 and Lessee shall not be required, etc.” (Italics ours.)
 

 The appellants own no “acreage”; nor have they any “interest” in royalties in the S. W. % of the section, since these royalties were purchased by the defendants C. O. Noble, A. O. Fontenot, and Gilbert Fontenot,
 
 who own a royalty interest in the S. W. °f the section alone
 
 and, therefore, are entitled to participate in the production from the S. % of the tract, under the plain terms of the particular phrase of paragraph 11 of the lease, upon which appellants and the Carters rely.
 

 The defendant Charles O. Noble purchased by warranty deed from the Carters, who were the owners of the property at the time they executed the deed, and who then owned sufficient royalty in the tract leased to deliver same to the vendee.
 

 There is production on the S. W. *4 of the section, which is being saved and, under his deed, defendant Charles O. Noble is not required to accept anything less than he purchased. The same is true as to the defendant A. O. Fontenot and his assignee, Gilbert Fontenot.
 

 Besides, the Shell Petroleum Corporation, the lessee, is not here asserting that any change or division of the royalties in this case operates to increase its obligations or to diminish its rights under paragraph 11 of the lease; and it is clear that this paragraph was inserted in the lease purely for the benefit of the lessee, as shown by its provisions, which are as follows: “11. It is agreed that the estate of either party hereto may be assigned in whole or in part. All of the covenants, obligations and considerations of the within lease shall extend to and be binding upon the parties hereto, their heirs, executors, administrators, successors, assigns and successive assigns. But it is expressly agreed, with reference to every change or division whatsoever, and howsoever, arising or effected, in the ownership of said land,
 
 royalties
 
 or rental or other moneys,
 
 or any part of the same,
 
 or any of the same,
 
 that no such change or division shall operate to increase the obligations or. diminish the rights of Lessee hereunder;
 
 that, regardless of any such change or division, said land shall be developed and operated, and all royalties accruing hereunder shall be treated, as an entirety,
 
 such royalties shall at all times be divided among and paid to the owners thereof in proportions according to the acreage and/or in
 
 
 *391
 

 terest owned by each,
 
 and Lessee shall not be required
 
 to offset wells on separate tracts or portions of said land nor to furnish upon or as to any tract or portion separate, measuring or receiving tanks;
 
 and that, notwithstanding any other actual or constructive notice whatsoever to Lessee, no such change or division shall be binding upon Lessee unless and until after thirty (30) days written notice thereof, from both Lessor and Lessor’s successor or successors in interest, their successors and assigns, in which all such parties in interest concur, shall have been delivered to Lessee. And it is hereby agreed in the event this lease shall be assigned as to a part or parts of the above described land, and the assignee or assignees of such part or parts shall fail to make or shall default in the payment of the proportionate part of the rentals due from him or them, such failure or default shall not operate to defeat or affect this lease, insofar as it covers any part or parts of said land as to which said Lessee or any assignee thereof shall make due payment of said rentals.” (Italics ours.)
 

 Paragraph 11 of the lease is binding between the contracting parties but, under this paragraph, the lessee is not concerned as to any change in the ownership of the land, or as to any division of the royalties, which does not operate to increase the obligations or diminish the rights of the lessee.
 

 Appellants are not the vendees of the owners of separate tracts pooled in a joint lease. It is not possible, therefore, to divide the royalty in this case in proportion to the ownership of the acreage.
 

 In the absence of such a basis for division, it is provided in paragraph 11 of the lease that the royalties “shall be divided among and paid to the owners thereof
 
 in proportions according to the
 
 * * *
 
 interest owned by each”;
 
 and, as the division of the royalties made in this case by the lessors does not operate to increase the obligations or diminish the rights of the lessee, Shell Petroleum Corporation, the lessors were at liberty to divide the royalties in the manner which has been done.
 

 Judgment affirmed.
 

 FOLJRNET, J., dissents.