## ARKANSAS FUEL OIL CO. *v.* LOUISIANA ᴇx ʀᴇʟ. MUSLOW.

No. 760.   Argued April 7, 1938.—Decided May 2, 1938.

*Mr. Robert Roberts, Jr.,* with whom *Mr. H. C. Walker, Jr.* was on the brief, for appellant.

*Mr. John B. Files* submitted on brief for appellee.

Mʀ. Jᴜsᴛɪᴄᴇ Bʟᴀᴄᴋ delivered the opinion of the Court.

Appellant (defendant below) challenges Act 64 of 1934 of Louisiana on the ground that the Act "if enforced

198

. . . , in the manner relied upon . . . , would require . . . [appellant] to pay to . . . [appellee] the value of property which did not belong and never has belonged to . . . [appellee], thereby leaving [appellant] responsible and liable to the true owner of such property for the value thereof, and in that manner *depriving* . . . [appellant] *of its property without due process of law,* and denying to it the equal protection of the laws contrary to the provisions and requirements in the Constitutions of the United States and of the State of Louisiana."

The Act (the pertinent part of which is set out below)[1] provides that a purchaser of oil can extinguish the indebtedness for the oil (as against all other parties) by paying the person who drilled and sold it under a lease from the last "record owner," if the recorded instrument

---

[1] ". . . any person, firm or corporation that has actually drilled or opened on any land in this State, *under a mineral lease granted by the last record owner,* as aforesaid, of such land or of the minerals therein or thereunder if the mineral rights in and to said land have been alienated, who holds under an instrument sufficient in terms to transfer the title to such real property, any well or mine producing oil, gas or other minerals shall be presumed to be holding under lease from the true owner of such land or mineral rights and the lessor, royalty owner, lessee or producer, or persons holding from them shall be entitled to all oil, gas or other minerals so produced, or to the revenues or proceeds derived therefrom, unless and until a suit testing the title of the land or mineral rights embraced in said lease is filed in the district court of the parish wherein is located said real property. A duly recorded mineral lease *from such last record owner* shall be full and sufficient authority for any purchaser of oil, gas or other minerals produced by the well or mine aforesaid to make payment of the price of said products to any party in interest under said mineral lease, in the absence of the aforementioned suit to test title or of receipt, by such purchaser, of due notification by registered mail of its filing, and any payment so made shall fully protect the purchaser making the same; and so far as said purchaser is concerned as against all other parties the producer of such oil, gas or other minerals shall be conclusively presumed to be the true and lawful owner thereof."

of conveyance is sufficient to pass title in Louisiana, and in the absence of any suit filed to test the title of the land or oil or due notice by registered mail of the filing of such suit.— Section 3 authorized purchasers to delay payment for purchases previously made until a lapse of sixty days after effective date of the Act (August 1, 1934), and denied protection to purchasers who paid the "last record" owner before the expiration of that period. The Louisiana Court of Appeal decided this sixty-day period was in effect a short statute of limitations as against any possible owners not shown of record.

The District Court of Caddo Parish rendered judgment for appellee. The Louisiana Court of Appeal, Second Circuit, sustained [2] and the Supreme Court of Louisiana denied certiorari. The presiding judge of the Louisiana Court of Appeal granted an appeal to this Court under authority of 28 U. S. C. § 344 (a).

The record discloses that:

May 24, 1927, Ackerman Oil Company, a corporation, by its President and Secretary, executed a deed to A. C. Best and Sherman G. Spurr for the land in question, which was duly recorded as provided by Louisiana law. April 18, 1933, Best and Spurr executed an oil lease to Hyman Muslow (appellee) under which the owners would receive ⅛ of the oil produced and Muslow ⅞. Thereafter, Muslow entered upon the leased land; equipped a well; contracted to sell oil to The Louisiana Oil Refining Corporation; [3] laid a mile and a half pipe-line to appellant's line and, between July, 1933, and September, 1934, delivered oil to appellant under the contract of sale. May 20, 1935,

[2] *State* v. *Louisiana Oil Rfg. Co.*, 176 So. 686.

[3] The Louisiana Oil Refining Corporation went through reorganization proceedings under § 77–B of the Bankruptcy Act after suit was originally filed against it by Muslow. The Arkansas Fuel Oil Co. succeeded to its assets and liabilities and was substituted as defendant.

Muslow filed suit under the 1934 Act for mandamus to require payment for the oil. An alternative writ of mandamus was issued returnable May 28, 1935, on which date the Company filed petition in bankruptcy under § 77-B of the National Bankruptcy Act. Appellant later answered and did not question that it owed someone $445.00 for the oil, but asserted that the conveyance to Best and Spurr was not translative of title to the oil due to inadequate consideration and lack of authority on the part of the corporate officers who signed the deed. Denial was made that Best and Spurr were the true owners of the land, on the same grounds. The courts of Louisiana decided these questions against appellant. Appellant also alleged that ". . . the said lands, having been forfeited to the State of Louisiana for non-payment of taxes on July 31, 1915, as appears from the forfeiture . . . are the property of the State of Louisiana." Concerning the statute under attack, the Court of Appeal of Louisiana has said:[4]

"We experience little difficulty in determining the legislative intent in adopting this Act. It supplied a long-felt need, and in its cperative effect will serve to prevent imposition upon and unjust discrimination against those whom it was intended to protect. The Act establishes a rule of conduct for the protection of lessors, their assignees under oil and gas leases, and also a rule of security and safety for lessees and those holding under or purchasing from them. . . . The Act was designed also to protect those persons whose rights arose from or are based upon contracts with the last record owner of the land covered thereby, and to those who deal with or acquire from such persons."

Appellant contends that this law as applied would enable Muslow to recover the value of the oil delivered to

---

[4] *State v. Hope Producing Co.*, 167 So. 506, 510.

appellant "which . . . [Muslow] did not own" and that appellant would also be left responsible to the true owner of the oil. The court below said that "Over eight years had elapsed when this suit was filed and the company, [transferor in the deed of record] *the only person to complain*, had not raised its voice in protest of its officers' actions." (Italics supplied.) Although nearly eleven years have elapsed since deed was made to Best and Spurr and almost four years since appellant purchased, received and did not pay for the oil, the record does not disclose that there has been any other claimant or purported owner of the land nor does it show any effort by appellant to pay the money into court for the benefit of a "true owner," as it might under Louisiana law.[5] The only suggestion appellant has made as to any owner not of "record" was that the property belonged to the State of Louisiana. That State—alleged by appellant to be the true owner of the land from which the oil was obtained—passed the 1934 Act and its courts have held that payment to Muslow will relieve appellant of the indebtedness. Appellant seeks to escape payment to Muslow for the oil which it purchased in 1934 on the ground that such payment would not discharge the indebtedness to a "true owner"—alleged to be the State of Louisiana. The Louisiana Court of Appeal speaking in this case has declared that the statute "protects the purchaser in paying the price to the one from whom the oil has been purchased; and, *under the express declarations of the Act*, no recourse may thereafter be had by any third person or adverse claimant against such buyer." Since no adverse claimant to the land has appeared in eleven years, it is clear under all the circumstances of this case that payment for the oil bought from

---

[5]Acts of La., No. 123, 1922; La. Gen. Stat. (Dart) § 1556–63; cf. *Shell Petroleum Corp.* v. *Carter*, 187 La. 382; 175 So. 1; see *Cassard* v. *Woolworth*, 165 La. 571, 575; 115 So. 755.

Muslow in 1933 and 1934 will not deprive appellant of any rights under the Federal Constitution.

"It is a matter of common occurrence—indeed, it is almost the undeviating rule of the courts, both state and Federal—not to decide constitutional questions [of the validity of a State Act] until the necessity for such decision arises in the record before the court." *Baker* v. *Grice,* 169 U. S. 284, 292. We see no such necessity here. The judgment appealed from is

*Affirmed.*

MR. JUSTICE STONE concurs in the result.

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.