**STATE ex rel. BEAN et al. v. CADDO CRUDE OIL PURCHASING CORPORATION.**

No. 5862.

Court of Appeal of Louisiana. Second Circuit.

March 31, 1939.

Rehearing Denied April 28, 1939.

334

Hussey & Smith, of Shreveport, for appellant.

Meadors & Gensler, of Homer, for appellees.

TALIAFERRO, Judge.

Relators, ten in number, seek mandamus (under the provisions of Act No. 64 of 1934) to compel the defendant to pay over to them, proportionately to their respective ownership therein, money in its hands, the price of crude oil produced from the NW¼ of NE¼ of Section 32, Township 21 North, Range 4 West, in Claiborne Parish. The total amount due by respondent to all persons interested is $13,695.64.

Relators' claims in the aggregate amount to only $1480.58, or 1937/17920ths of the whole fund.

It is alleged and proved that J. T. Bean, Jr., purchased said land from J. J. Henry on February 29, 1924; that on December 10, 1934, Bean executed to E. T. Oakes an oil, gas and mineral lease wherein the lessee agreed, in the event oil in paying quantities should be produced therefrom, "To deliver to the credit of the lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from said leased premises; that Oakes assigned said lease to J. G. Rankin on February 27, 1935, who on June 23, 1937, assigned same unto C. H. Lyons and E. F. Neely; that Lyons and Neely on July 16, 1937, assigned an undivided three-fourths interest in the lease unto the Atlantic Refining Company, who explored and drilled a well which produced the oil, the price of which is involved herein. The lease to Oakes contains this stipulation also: "If said lessor owns a less interest in the above described property than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which their interest bears to the whole and undivided fee."

All instruments referred to were timely registered.

It is further alleged and admitted that respondent has purchased and transported through its pipe line all of the said oil, and that relators' interest in said fund is confined to the one-eighth royalty stipulated in favor of Bean in the lease to Oakes.

The right to institute and prosecute this suit is based upon the refusal of respondent to pay over to relators the amounts alleged to be due them, respectively, coupled with the fact that they are or hold under the lessor, the "last record owner".

Respondent justifies its refusal to make distribution of the fund in question for the following reasons:

While admitting that J. T. Bean, Jr., claims exclusive ownership of said land, it avers that other persons are asserting interest therein, some of which are predicated upon muniments of title; that respondent does not know which of said claims are superior, but is willing and ready to pay said funds to those whom the court determines are entitled thereto.

Respondent further avers that all claimants to said fund trace their title to a common author, viz; Jesse Jackson; that on February 17, 1902, Jesse Jackson and his wife, Eliza Jackson, executed unto Emily Bean, wife of J. T. Bean, Sr., and unto Eliza Bean, wife of Ben Bean, an instrument purporting to convey unto said vendees the said tract of land; that Ben Bean died in the year 1914, "prior to any further disposition of the property", and his succession was opened in Claiborne Parish in September, 1937, and his heirs, to-wit: Dilcie Bean Franklin, Janie Bean Colquitt and Hannah Bean Jones, were so recognized and sent into possession of an undivided one-fourth interest in said land; and that by virtue of this judgment, said named heirs claim to be the last record owners of said one-fourth interest.

Respondent neither denies nor affirms that relators or said heirs of Ben Bean or other claimants are the "last record owners" of said property, and says further, "That due to the fact that there are two sets of adverse claimants, holding under two separate chains of title, and each set claims to be the last record owners of said property, your respondent does not know who are the last record owners and is, therefore, unable to make a distribution of the fund in its possession in accordance wth Act 64 of 1934."

It is further alleged that in addition to the above mentioned claimants, other persons are asserting interest in the land, free of any oil, gas and mineral lease, adversely to those claiming under the lease to Oakes, supra.

Respondent, while disclaiming knowledge of the identity of all claimants to said fund and the nature of their respective claims, lists over 70 in its answer.

In view of the situation reflected from the foregoing epitome of its allegations, respondent attached to its answer a certified check for $13,695.64 in favor of the Clerk of Court, Caddo Parish, and asked that it be allowed to deposit the amount in the registry of the court, as well as future accruals of the fund, in keeping with Act No. 123 of 1922, and that all adverse claimants thereto be cited and directed to come into court and assert their interest therein contradictorily with each other. That respondent be relieved of all further responsibility in connection with said fund and be dismissed herefrom without costs.

After the case was tried and submitted, respondent filed a plea attacking the constitutionality of Act No. 64 of 1934, if construed to be applicable to and controlling of this case, to the exclusion of its right to resort to the provisions of Act No. 123 of 1922, on the ground that it would violate the 14th Amendment of the Constitution of the United States U.S.C.A. and Article One, Section Two of the Constitution of this state, in that such a construction would deprive respondent of its property without due process of law.

There was first judgment for respondent, recalling the alternative writ of mandamus and allowing it to proceed as in concursus. A rehearing was granted and, after further consideration of the case, there was judgment in favor of relators as by them prayed for. Respondent brings appeal.

Over relators' objection, respondent introduced and filed in evidence (1) the above referred to deed from Jesse Jackson and wife unto Emily and Eliza Bean; and (2) judgment of the court recognizing and placing in possession the heirs of Ben Bean. Testimony of an attorney was likewise admitted to the effect that he represented several persons who were asserting an interest in this land. However, the nature and basis of their asserted ownership was not divulged. It was also shown that the Atlantic Refining Company and Lyons and Neely were given a mineral lease by said heirs of Ben Bean, and that these heirs and others claiming through Jesse Jackson had made demand upon respondent to recognize their claims to an interest in the land and the fund in question, and to make payments to them accordingly. It also appears that several contracts with attorneys by some of these claimants, presumably contingent in nature, have been recorded since the lease to Oakes in 1935. All of this testimony and evidence was offered by respondent in support of its prayer for a concursus.

Relators take the position that, as they hold under J. T. Bean, Jr., the "last record owner", nothing short of a suit by one or more adverse claimants would justify respondent in withholding payment to them, as herein sought.

■ No suit has been filed by any claimant adversely to J. T. Bean, Jr., to recover any part of or an interest in this land or said fund. Since J. T. Bean, Jr.,

has held and possessed the land as owner under a deed translative of property for more than ten years, without disturbance in law or fact, so far as this record reveals, as against the adverse claimants disclosed herein, we think he is the "last record owner" within the meaning and intendment of Act No. 64 of 1934.

On March 2, 1938, prior to institution of this suit, respondent filed in the office of the Clerk and Recorder of Claiborne Parish a written declaration wherein public notice was given that the oil produced and to be produced from said land has been and will continue to be purchased by it and that the purchase price thereof would be paid to J. T. Bean, Jr., and some eighty odd other named persons (including all of the other relators), all of whom hold under or through either J. T. Bean, Jr., or E. T. Oakes, the original lessor and lessee, "as their interest may appear". However, the commitment in this notice was not followed up by payments, making the filing of this suit on May 21st necessary.

■ We think the trial judge correctly resolved the questions tendered by the pleadings and evidence. He gave written reasons for the conclusions reached by him. We adopt as our own the following portions of said reasons:

"Act 64 of 1934, we think, is applicable to the facts here, but respondent pleads that the Act is unconstitutional in that it deprives a stakeholder of its right to provoke a concursus of several persons who claim an interest in a fund in the hands of a stakeholder. We think the plea is not well founded, as there is nothing in the Act that would have prevented respondent from having provoked a concursus in this case.

"It appears that in March, 1938, it was purchasing the oils produced from the land, and it could have provoked the concursus April 1st or May 1st and, not having done so, relators on May 21st exercised the right accorded them by law. We mean by this that the Act of 1934 does not preclude a stakeholder from provoking a concursus, even in a case of this kind, but he must do so before some other action is taken by a claimant, which might preclude a subsequent concursus proceeding.

"We think that Act 64 of 1934 was passed in the interest of both the royalty owners, lessees and the purchasers of oil,

and it protects all parties coming within its terms. Relator, J. T. Bean, Jr., an owner in possession of the forty acres of land whose deed is of record for a period of ten years, (although it appears that there was a defect in the title if Ben Bean was the husband of Emily Bean) who leased the land to another and under which lease oil was produced, although the lessee, to avoid any possible contest over his lease also acquired a lease from the other side of the house; that the purchaser of the oil who files a notice that he is purchasing it and will pay the proceeds thereof to the original lessor (and his vendees), will be protected in said payments as against the other 'claimants' who have not filed any suit to recover their interest in the fund.

"The oil produced by the lessee is movable property, which has been purchased by respondent, and who has notified the world that it intends to make payment therefor to relators (and their vendees) said notice being in the form of a recorded notice, as provided by Act 64 of 1934. As to the oil already produced, it is clear that any claimant, other than those named in the recorded notice, would be estopped from hereafter claiming a part of the proceeds of the oil already sold; however, they may yet enter suit and stop any future payments.

"It is argued that the Act is not applicable to a situation as is presented here, that is, where the lessee is holding the property and producing oil under two leases; hence, that it does not necessarily follow that the oil is being produced under the lease granted by J. T. Bean, Jr.; that the lessee owes an obligation to the lessors under the second lease to pay royalties to them. A sufficient answer, it seems, to this contention is that the respondent is not the lessee under either lease and has no obligation other than to pay for the oil purchased, and, as we hold that it will be protected by the plain provisions of Act 64 of 1934, it has no interest in championing the problematical rights between the second lessors and their lessee.

"Act 64 of 1934 is similar in effect to the concursus statute. Under the latter, the respondent could have deposited the money in court and cited all of the claimants and, if those under the second lease did not see fit to litigate their rights as against those claiming under the first lease, relators here, the money would be paid to these relators (and assigns) and respondent would be thereby protected. Act 64 of 1934 provides a shorter and more economical method of arriving at the same end. The respondent merely records a written notice of its intention to pay the money to certain designated persons (or all claimants as it sees fit), which places the burden upon the 'claimants' in this case to litigate their rights against relators or, if the notice had contained the names of relators and 'claimants', the burden would have fallen upon relators to have litigated their rights as against claimants. In the first instance, that of concursus, the claimants are notified by citation to enter their claims and, under Act 64 of 1934, they are notified by recorded notice that the money will be paid to certain designated persons, which requires them to enter suit to assert their claim, and their failure in either instance to file their claim in court bars their right to the fund in contest, and this is all that a purchaser of the oil is interested in."

Respondent as stakeholder should be concerned only with protecting itself against the danger of being exposed to double liability for the price of the oil. When made secure against such a contingency, its anxiety should be allayed. Payments to relators under a decree of court will shield it completely against the evil day of double payments. State ex rel. Muslow v. Louisiana Oil Refining Corporation, La.App., 176 So. 686; State ex rel. Boykin v. Hope Producing Company, La.App., 167 So. 506.

The constitutionality of Act No. 64 of 1934 was directly attacked in the Muslow case by the respondent on the same grounds advanced by respondent herein. Its constitutional integrity was expressly upheld. The Supreme Court declined to review the judgment with the statement that it was correct. The United States Supreme Court, considering the case on a writ of error, declined to pass on the constitutional question raised. Arkansas Fuel Oil Co. v. State ex rel. Muslow, 304 U.S. 197, 58 S.Ct. 832, 82 L.Ed. 1287.

For the reasons herein assigned, the judgment appealed from, having been found to be correct, is hereby affirmed with costs.