**SPAULDING et al. v. DOUGLAS AIRCRAFT CO., Inc.**

No. 3806.

District Court, S. D. California, Central Division.

June 4, 1945.

986

Jos. I. McMullen and Leo R. Friedman, both of San Francisco, Cal., for plaintiffs.

Francis M. Shea, Asst. Atty. Gen., and Walker Lowry, Atty., Department of Justice, of Washington, D. C., Charles H. Carr, U. S. Atty., and Ronald Walker and Robert E. Wright, Asst. U. S. Attys., both of Los Angeles, Cal., for defendant.

HARRISON, District Judge.

This is an action under the Declaratory Judgment Statute, wherein plaintiffs seek to have this court hold that the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191, in its original form to and including the amendments by the act of July 14, 1943, is unconstitutional and unenforceable. The controversy arises over the fact that the War Department has determined that the plaintiffs' profits for the year 1942 were excessive, and in order to recapture said claimed excessive profits has directed the defendant to withhold certain payments due the plaintiffs for the benefit of the United States in accordance with the provisions of said Renegotiation Act.

The United States intervened under the provisions of Sec. 401, Title 28 U.S.C.A. and has moved for a summary judgment on the grounds that the complaint fails to state a claim upon which relief can be granted. Plaintiffs admit that their cause of action is predicated solely upon the theory that said act is unconstitutional and if the court finds that said act is constitutional the motion should be granted.

A similar motion involving the constitutionality of said act was made in the case of Lincoln Electric Co. v. Knox et al., D.C., 56 F.Supp. 308, 310, before a three judge court, wherein the court denied the motion for summary judgment stating: "The rule for summary judgment was, in our opinion, never intended to throw upon the court the burden of determining a case involving, on the one hand, a delicate question of law and, on the other, complicated and controverted facts, without an adequate and proper hearing."

The pleadings and affidavits submitted on the motion indicated to me that probably the factual situation could be fully developed on a pre-trial, consequently, I set the case for a pre-trial hearing at the same time the motion for summary judgment was set.

The facts as developed by the admissions of the pleadings and the admissions of the parties at the pre-trial hearing developed that the defendant, Douglas Aircraft Company, was a builder of airplanes for the government in the furtherance of the war effort; that the said defendant entered into numerous sub-contracts, in the form of work orders, with the plaintiffs for the manufacture, production and sale of mechanical fittings and parts, in accordance with specific plans and specifications furnished by the prime contractor to be used in the fabrication of airplanes built by it, in accordance therewith. The work orders usually were given and accepted by the plaintiffs on the strength of bids submitted to the prime contractor. The plaintiffs at all times knew that the parts manufactured by them for the defendant were to be used in the fabrication of airplanes for and at the expense of the government.

Following the adoption of the Renegotiation Act, through an exchange of letters, the plaintiffs agreed that all work orders received from the defendant would be subject to the provisions of said act, insofar as the same were required by law or by contract. Plaintiffs further agreed that the special conditions set forth in 42 and 42a would be applicable to all work orders received from defendant. The conditions contained in 42 and 42a amplified the procedure provided in said Renegotiation Act and provided further for the repayment of excess profits by sub-contractors in accordance with the provisions of said act. (See Exhibits A and B to answer admitted in evidence at said pre-trial.)

Thereafter, defendant continued to issue work orders to the plaintiffs and the plaintiffs continued to perform the same. Un-

der the Renegotiation Act the War Department found that the plaintiffs' profits were excessive for the year 1942 and directed the defendant to withhold the amount of profits so found from amounts owing by defendant to plaintiffs under and by virtue of various subsequent work orders.

Upon the conclusion of the pre-trial hearing each party stipulated that the admissions made at said hearing would become a part of the record and that the motion for summary judgment and the final determination of the case should be submitted to the court for decision.

The plaintiffs contend that the said act is unconstitutional and therefore defendant is not justified in withholding payment pursuant to the directive of the War Department and have asked the court to so declare. It is admitted that the payments are withheld solely by reason of the withholding orders of the War Department in pursuance to the provisions of the said Renegotiation Act. The plaintiffs admit that if said act is constitutional they have no cause of action. All parties seek a ruling on the sole issue of constitutionality of said act and have directed their briefs to that end.

■ On the other hand, the court is mindful that this issue should be avoided if the case can be determined on other grounds, notwithstanding the desires of the litigants. Arkansas Fuel Oil Co. v. Louisiana, etc., 304 U.S. 197, 58 S.Ct. 832, 82 L.Ed. 1287; 16 C.J.S., Constitutional Law, § 94, p. 208; 6 R.C.L. p. 76 and 77; Crowell v. Benson 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598.

■ The burden rests upon the plaintiffs to establish the unconstitutionality of the act in question beyond a reasonable doubt. Nicol v. Ames, 173 U.S. 509, 514, 19 S.Ct. 522, 43 L.Ed. 786. While I do not believe they have overcome this heavy burden, I feel that this case can finally be determined on other grounds, namely:

First. The correspondence between the parties constituted a contract between them. To me these letters clearly establish an agreement on behalf of the plaintiffs to be bound by said Renegotiation Act, and thereby said agreement became a part of every work order notwithstanding anything therein to the contrary. The parties having thus contracted, it becomes immaterial whether the act is constitutional or not. Jones et al. v. Great Southern Fireproof Hotel, 6 Cir., 86 F. 370; Stover v. Winston Bros. Co., 185 Wash. 416, 55 P.2d 821; United States v. San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; Interstate Consol. St. R. Co. v. Massachusetts, 207 U.S. 79, 28 S.Ct. 26, 52 L.Ed. 111, 12 Ann.Cas. 555; International & G. N. Ry. Co. v. Anderson County, 246 U.S. 424, 38 S.Ct. 370, 62 L.Ed. 807.

The position of the plaintiffs is no different than if they had entered into a private contract with the defendant agreeing that all work orders would be filled and the charges therefore would include no excessive profits, leaving the determination of excessive profits solely and exclusively to arbitration by a third party. If such contract had been entered into, certainly the plaintiffs would not question its enforcibility. In the case at bar the parties have agreed that the agencies of the government would have the authority to eliminate excessive profits in accordance with the provisions of the Renegotiation Act. I see no difference between the two situations.

It would therefore appear that the parties, by their own contract, have eliminated the constitutional question.

■ Second. It is a recognized principle that a person may be estopped from asserting the unconstitutionality of an act. Pierce Oil Co. v. Phoenix Ref. Co., 259 U.S. 125, 128, 42 S.Ct. 440, 66 L.Ed. 855; United Fuel Gas Co. v. Railroad Commission, 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390; Wall v. Parrott Silver & Copper Co., 244 U.S. 407, 37 S.Ct. 609, 61 L.Ed. 1229; Com'r of Internal Revenue v. Independent Life Ins. Co., 6 Cir., 62 F.2d 1066, 1067; Daniels v. Tearney, 102 U.S. 415, 26 L.Ed. 187.

■ The correspondence heretofore referred to and the conduct of the Plaintiffs, in my opinion, creates an estoppel. The plaintiffs voluntarily executed their letter of November 14, 1942, at which time they indicated a willingness to be bound by the terms of the Renegotiation Act. They continued to accept work orders from the defendant. They knew and agreed that in performing such work in connection with the war effort any excessive profits were subject to recapture by and through the agencies of the government. After obtaining work orders and completing the same they are now attempting to avoid the effect of their agreement. It seems to me that by their own conduct they have

waived their right to assert the unconstitutionality of the act in question and by the same token are estopped at this late date to retain any excessive profits. Having accepted the benefits of said work orders they are not now in a position to avoid the terms under which said work orders were issued and received.

■ Third. This action presents no justiciable controversy. Article I, § 9, clause 7 of the Constitution provides as follows: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law * * *."

Congress in making appropriations has the power and authority not only to designate the purpose of the appropriation, but also the terms and conditions under which the executive department of the government may expend such appropriations. Thus the War Department was required to make the Renegotiation Act a part of all its contracts.

■ The purpose of the appropriations, the terms and conditions under which said appropriations were made, is a matter solely in the hands of Congress and it is the plain and explicit duty of the executive branch of the government to comply with the same. Any attempt by the judicial branch of our government to interfere with the exclusive powers of Congress would be a plain invasion of the powers of said body conferred upon it by the Constitution of the United States.

Our judiciary has been exceedingly careful not to intrude upon the powers of the other two branches of the government and has often recognized its limitations in this respect.

In the case of Decatur v. Paulding, 14 Pet. 497, 39 U.S. 497, 522, 10 L.Ed. 559, the court expressed itself as follows: "* * * To permit an interference of the courts of justice with the accounts and affairs of the treasury, would soon sap its very foundations; money would not be drawn out according to its own rules, nor could the secretary of the treasury ever inform congress of the amount needed. Congress would, of necessity, be compelled to consult the court, not the secretary, when making appropriations."

In Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, at page 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078, the following language is used: "The functions of the government under our system are apportioned.

To the legislative department has been committed the duty of making laws, to the executive the duty of executing them, and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct, or restrain the action of the other. * * *"

Pertinent language is used in Standard Oil of California v. United States, 9 Cir., 107 F.2d 402, 409, wherein it was stated: "* * * The disposal of the public lands is not a subject over which the 'judicial power' of the United States is extended. It is a field in which the authority of the Congress is supreme. Lee v. Johnson, 116 U.S. 48, 6 S.Ct. 249, 29 L.Ed. 570; Art. IV, sec. 3, clause 2 of the Constitution, U.S.C.A. * * *"

Again in Stitzel-Weller Distillery v. Wickard, 73 App.D.C. 220, 118 F.2d 19, at page 22, the court said:

"In the Haskins Bros. case [Haskins Bros. & Co. v. Morgenthau] we said (66 App.D.C. 178, 85 F.2d [677], 681):

"'In the instant case it is therefore of no consequence whether the act under which the tax was collected be constitutional or unconstitutional. The fact that the tax has been collected and deposited in the treasury by the collecting officials of the government renders the custodian of the fund impotent to withdraw the money and disburse it unless and until directed to do so by an act of Congress or until the United States shall submit to be sued to determine its disposition.

"'It is equally of no consequence that the bill alleges that the fund belongs to appellant and others similarly situated. It is not in the hands of the officers but in the treasury, and though earmarked as a special trust fund, has been mingled with the moneys of the United States. The purpose of the bill, therefore, is to coerce the United States, through their officers to pay out money in the treasury as to which Congress has limited the power of withdrawal to the payment to the Philippine government. *To permit this, would be to usurp the legislative function of appropriation, to substitute a court for the executive officers of the government, and to supplant by an order of court the duty and obligations imposed upon them by their oaths of office.* It is therefore of no moment whether the United States have the use

of this money as they do the ordinary revenues of the government or whether the money represents a trust fund created by Congress and earmarked for a specific purpose. In either case it is money in the Treasury of the United States as to which the United States had and have the power of control and disposition.'" (Italics supplied.)

In Gillioz v. Webb et al., 5 Cir., 99 F.2d 585, 586, the following may be found: "On its face the constitutional point is without merit, for what is in question here is not the construction or validity of a statute, but of a contract voluntarily entered into with the Government. The fact that Congress authorized, indeed, required the inclusion in it of the clause in question as a condition to letting the work, is significant only upon the question of the authority of the executive officer to write the clause in. Without such authorization it may well be doubted that the contracting officer of the Government would have had authority to insert it. Cf. United States for Use and Benefit of Johnson v. Morley Construction Co., D.C., 17 F.Supp. 378, 388."

Under the Public Contracts Act of June 30, 1936, 41 U.S.C.A. § 35 et seq., Congress attached specific strings to certain appropriations analogous to those involved in the present action. Congress provided for the payment of minimum wages as determined by the Secretary of Labor to be paid by sellers of goods to the government. The constitutionality of this act was raised in the case of Perkins v. Lukens Steel Co., 310 U. S. 113, 60 S.Ct. 869, 84 L.Ed. 1108. An injunction had been granted against the enforcement of the act and as a result the effectiveness of the same had been nullified for over a year. This provoked rather straightforward language from the Supreme Court, speaking through Mr. Justice Black, wherein certain lines of demarkation were drawn between the functions of the legislative and executive branches of the government and the judiciary. In plain and definite terms certain paths were forbidden for the courts to travel. Among other things the court stated, starting at page 127 of 310 U.S., page 876 of 60 S.Ct., 84 L.Ed. 1108:

"Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases. Acting through its agents as it must of necessity, the Government may for the purpose of keeping its own house in order lay down guide posts by which its agents are to proceed in the procurement of supplies, and which create duties to the Government alone. It has done so in the Public Contracts Act. * * * Courts have never reviewed or supervised the administration of such an executive responsibility even where executive duties 'require an interpretation of the law.' *Judicial restraint of those who administer the Government's purchasing would constitute a break with settled judicial practice and a departure into fields hitherto wisely and happily apportioned by the genius of our polity to the administration of another branch of Government.* (Italics supplied.)

\* \* \* \* \*

"In this legislation Congress did no more than instruct its agents who were selected and granted final authority to fix the terms and conditions under which the Government will permit goods to be sold to it. The Secretary of Labor is under a duty to observe those instructions just as a purchasing agent of a private corporation must observe those of his principal. In both instances prospective bidders for contracts derive no enforceable rights against the agent for an erroneous interpretation of the principal's authorization. For erroneous construction of his instructions, given for the sole benefit of the principal, the agent is responsible to his principal alone because his misconstruction violates no duty he owes to any but his principal. The Secretary's responsibility is to superior executive and legislative authority. Respondents have no standing in court to enforce that responsibility or to represent the public's interest in the Secretary's compliance with the Act. That respondents sought to vindicate such a public right or interest is made apparent both by their prayer that the determination be suspended as to the entire steel industry and by the extent of the injunction granted.

\* \* \* \* \*

"*The case before us makes it fitting to remember that 'The interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied, that such a power was never intended to be given to them.*'" (Italics supplied.)

990

The plaintiffs being clearly within the purview of the Renegotiation Act and having agreed to be bound thereby are in no better position than the prime contractor. I am of the opinion that this case is distinguishable from Coffman v. Breeze Corporations, Inc. et al., 323 U.S. 316, 65 S.Ct. 298, in that the case at bar deals with the expenditure of public funds. It would therefore appear that the plaintiffs' problem is one beyond the reach of this court.

Therefore, in view of the facts pleaded in the complaint and the surrounding facts brought out in the pre-trial of this case, the defendant is entitled to a judgment of dismissal. Defendant is directed to prepare forthwith findings in accordance with this opinion.