Mrs. Lillian C. STEVENS, Testamentary Executrix of the Succession of Dr. Noah S. Cutrer and Nicholas D. Olivier, Appellants,

v.

HUMBLE OIL & REFINING COMPANY, Appellee.

No. 21626.

United States Court of Appeals Fifth Circuit.

May 27, 1965.

Rehearing Denied July 21, 1965.

Arthur C. Reuter, Reuter, Reuter & Schott, New Orleans, La., for appellant, Mrs. Lillian C. Stevens, Testamentary Ex'x of Succession of Dr. Noah S. Cutrer and Nicholas D. Olivier.

H. H. Hillyer, Jr., Bernard J. Caillouet, Charles Janvier, W. J. McAnelly, Jr., Lawrence K. Benson, H. H. Hillyer, III, New Orleans, La., for appellee, Humble Oil & Refining Co., Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., of counsel.

Before WISDOM and GEWIN, Circuit Judges, and BOOTLE, District Judge.

**WISDOM, Circuit Judge.**

For a long time this case, like other creatures spawned by Louisiana's water bottoms, has crawled sideways and backwards. Seven years ago Dr. Noah S. Cutrer, testator of Mrs. Lillian C. Stevens, and Nicholas D. Olivier began this action for cancellation of a mineral lease for nonpayment of royalties allegedly due. More than three years ago the court below ordered the defendant lessee, Humble Oil & Refining Company, to pay the disputed royalties into an escrow fund, pending the outcome of a suit brought by the plaintiffs in a Louisiana state court, *in 1958*, over the same tract of land as is claimed here. About two years ago, having made no discernible progress in state court, the plaintiffs moved for distribution of the deposited royalties. The court denied the motion. We affirm. We understand the plaintiffs' impatience, but we agree with the district court's conclusion that the plaintiffs have not sustained the burden imposed on them by the decree establishing the escrow fund.

## I.

December 19, 1953, plaintiff Stevens's testator, Noah S. Cutrer, gave Humble Oil & Refining Company a mineral lease covering some 1920 acres in and around Stone Island in the West Black Bay Field in Plaquemines Parish, Louisiana. Almost all of the property is under water. As Judge Wright pointed out in his opinion establishing the escrow: "that is the source of the difficulty. For there is a serious question concerning the plaintiffs'

title to the minerals in the water bottoms, which would normally belong to the state."[1] Cutrer v. Humble Oil and Refining Co., 202 F.Supp. 568, 569, 570. The State of Louisiana had previously issued a conflicting lease, State Lease No. 195, dated February 28, 1928, covering a large tract of land and water bottoms including most of the parcel the plaintiffs purportedly leased to Humble. This lease is now owned by Gulf Oil Corporation and the Estate of William Helis. Gulf has drilled producing wells on the lease; Gulf and Helis have paid royalties to the State.

For almost all of the five-year primary term of its lease from the plaintiffs, Humble paid delay rentals but did no drilling, allegedly because of its concern over the State's adverse claim to the leased premises. Then, late in 1958, its lease about to expire, Humble entered into a joint operating agreement with the State's lessees for the development of Stone Island and the immediately surrounding water bottoms, an area of about 250 acres (the "joint area").[2] The agreement designated Gulf as operator. December 18, 1958, one day before the expiration of the primary term, Gulf completed a well on the eastern half of Stone Island.

Meanwhile, November 13, 1958, before the first well had been completed, the plaintiffs filed an ejectment suit in a Louisiana court[3] to evict Gulf from this acreage and other portions of the lease in suit, including the joint area. Gulf answered that as to the water bottoms, it asserted a right to possession of the

---

1. La.Act 727 of 1954. LSA–R.S. 9:1107, declares that: "It has been the public policy of the State of Louisiana at all times since its admission into the Union that all navigable waters and the beds of same within its boundaries are common or public things and insusceptible of private ownership * * *." See also, LSA–Const.1921, Art. 4, § 2; La.Acts 106 of 1886, 110 of 1892, 121 of 1896, 153 of 1902, 52 of 1904, 189 of 1910, 54 of 1914, 139 of 1924, 258 of 1926, and 67 of 1932, insofar as here pertinent, now incorporated in LSA–R.S. 56:421; La.Act 258 of 1910, now LSA–R.S. 9:1101; Comment 30 Tulane L.Rev. 115.

2. "Humble's participation in the portion of this 'joint area' within the lease, about 250 acres, was calculated on the basis of the land area only, some 57 acres, on the ground that the water bottoms were excluded from the plaintiffs' lease and were covered by the state lease." Cutrer v. Humble Oil & Refining Company, E.D. La.1962, 202 F.Supp. 568 at 570.

3. Noah Cutrer and Nicholas D. Olivier v. Gulf Oil Corporation, Civil District Court for the Parish of Orleans, Louisiana, No. 366–650, filed November 13, 1958.

disputed property under State Lease No. 195 and by authority of the Louisiana Conservation Commissioner. Humble then intervened in the state action, and, on September 22, 1959, Gulf filed a supplemental answer, justifying its presence not only under the State lease, but also by virtue of the joint operating agreement with Humble, the plaintiffs' own lessee. This suit has never been moved to trial; it is still pending in state court.

March 9, 1959, several months after filing the action against Gulf, Cutrer and Olivier brought the present suit against Humble in the United States District Court for the Eastern District of Louisiana. In their complaint the plaintiffs alleged that oil had been produced on the premises leased to Humble, both during the primary term of the lease and afterwards, and that Humble had paid no royalties to the plaintiffs. They demanded cancellation of the lease and an accounting for all minerals taken. Alternatively, in the event that the lease, in whole or in part, was not cancelled, the plaintiffs asked an accounting for all minerals taken from those areas where the lease was still in effect. April 3, 1961, the district court rendered an opinion limited solely to the question of cancellation for nonpayment of royalties. The court decided that, though the plaintiffs were "probably right", Humble's position—that it was entitled to withhold the royalties because of the presence of an adverse claim by the State—was "at worst, erroneous", and that there was no proof that Humble was in bad faith. The court therefore declined to apply "the harsh sanction of cancellation". The question whether royalties attributable to the water bottoms were actually due was left open. Cutrer v. Humble Oil & Refining Company, E.D.La.1961, 192 F.Supp. 757, 758.

In a later opinion, dated March 30, 1962, the court considered the question of whether the royalties claimed by plaintiffs were in fact due. Cutrer v. Humble Oil & Refining Co., E.D.La.1962, 202 F. Supp. 568, aff'd 309 F.2d 752, cert. den'd 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767. That opinion dealt separately with various parts of the leasehold; the only part involved here, however, is that including *the water bottoms lying within the joint area*.[4] The court noted that since Gulf, under the joint operating agreement, was developing the joint area on behalf of Humble, Humble could not label Gulf's possession adverse. On the other hand, the court also recognized that, because of the very real possibility that the leased water bottoms belonged to the State, Humble would undergo a substantial risk of double exposure if forced to pay plaintiffs the royalties claimed due. The court was reluctant, therefore, to order payment, especially because of its view that the state proceedings pending between the plaintiffs and Gulf might "soon resolve the basic title question". In order to avoid subjecting Humble to the risk of paying twice, and at the same time to protect the rights of the plaintiffs, the court devised the following solution:

> "[A]s soon as an escrow plan can be established, Humble will deliver all accrued royalties attributable to the joint area water bottoms within the lease, and will henceforth pay into that fund all such royalties, at least quarterly, until such time as the plaintiffs' title is quieted or defeated, or until the further orders of the court. The court will retain jurisdiction of the case for reconsideration should anything prevent a prompt adjudication of the title question by the state tribunals." 202 F.Supp. at 574.

The 1962 escrow fund is the stuff of this appeal. April 30, 1963, the plaintiffs moved to have the escrow agent pay out the deposited royalties. The district court below denied the motion on the

4. With regard to the other portions in dispute, the court (1) held that Humble had, in effect, abandoned those portions of the leasehold outside the joint area already developed by Gulf; and (2) gave Humble ninety days to start developing those portions outside the joint area that no one had developed. Humble does not question the plaintiffs' title to the landed portions within the joint area.

ground that the plaintiffs, despite their continuing opportunity to get a "prompt adjudication of the 'title question' by the state tribunals", had simply failed to do so. Cutrer v. Humble Oil & Refining Company, E.D.La.1964, 228 F.Supp. 787.

## II.

The plaintiffs' argument reduces to two propositions: (A) that Humble would be adequately protected against double payment should the district court order distribution of the escrow fund, and (B) that the plaintiffs have been prevented from getting a "prompt adjudication of the title question" in state court.

A. The district court fully disposed of the first of these contentions in 1962, when it set up the escrow fund. This Court affirmed that disposition on appeal. 309 F.2d 752.

The plaintiffs do not argue that Humble's risk of double payment has decreased since 1962; nor do they raise any argument not already considered and rejected, here and below.[5] The only novel aspect of the plaintiffs' presentation is their reliance on Arkansas Fuel Oil Company v. State of Louisiana ex rel. Muslow, 1938, 304 U.S. 197, 58 S.Ct. 832, 82 L.Ed. 1287. But that case provides small comfort to the plaintiffs. The Arkansas Fuel Oil Company asked the Supreme Court to hold unconstitutional, Act 64 of 1934 (now LSA–R.S. 30:105 et seq.). This Act provides that a mineral lessee may not withhold royalties from a lessor with record title unless a suit testing the lessor's title has been filed in the parish where the leasehold is located; and that a lessee who does pay royalties to his lessor as required by the statute will be protected against double payment. The Court concluded that in the circumstances of the case payment would deprive the Company of no constitutional rights. The Court therefore did not pass on either the applicability or the constitutionality of the statute. Act 24 of the first Extra Session of 1935 (now LSA–R.S. 30:108) amended Act 64 of 1934 to exclude "minerals produced from lands belonging to the state". The effect of this amendment was also not considered by the Court in Muslow. It is clear that the Supreme Court recognized the state law. All that the state courts decided was that there was no evidence of any claim by the State; the Court did not reach the issue the plaintiffs rely on in the instant case.

■■■ B. The plaintiffs' second contention, necessarily not considered in any earlier phase of this suit, is more troublesome. This is the contention that they have been prevented from getting a prompt adjudication of the title question in the state court. The plaintiffs charge that Gulf, Humble, and the State of Louisiana are conspiring to keep the title question from ever being decided. The plaintiffs take the position that they can settle title only in an action to which the State is a party. They point out that Gulf could call the State in warranty in the ejectment action, but instead defends its presence on the leasehold by authority of Humble, plaintiffs' own lessee; and that sovereign immunity protects the State from suit anyway. Therefore, say the plaintiffs, not only would they lose the ejectment action should they ever move it to trial, but even if they won they would not get an adjudication of title.

We disagree with the plaintiffs' basic assumption that title can be settled against the State only. The district court, author of the escrow arrangement, spelled out precisely what the plaintiffs should do in order to get distribution of the escrow fund: they may either amend their petition or file a supplemental peti-

5. Plaintiffs urge that California Company v. Price, 1954, 225 La. 706, 74 So.2d 1, upholding the validity of a state patent to navigable water bottoms over a state lessee's objection that navigable water bottoms are insusceptible of private ownership, establishes the validity of plaintiffs' claim to the water bottoms here in suit. But the district court found that, in addition to the insusceptibility problem, however real, there is a substantial ambiguity in plaintiffs' title description. 202 F.Supp. at 574, esp. n. 32.

tion in the state action, styling that action one to quiet, or to remove a cloud from, title, and joining the State Mineral Board;[6] or they may bring an entirely new state action against both Gulf and the Mineral Board. The relief sought would be cancellation of State Lease No. 195 insofar as it purports to cover land the plaintiffs claim.

Recent Louisiana decisions leave no doubt that an action to quiet title, brought to cancel a State mineral lease, will lie against the Mineral Board and the State's lessee even though the State itself is not made a party. Walmsley v. Pan American Petroleum Corporation, 1963, 244 La. 513, 153 So.2d 375; Daigle v. Pan American Production Company, 1958, 236 La. 578, 108 So.2d 516. In Daigle the Louisiana Supreme Court described the action to quiet title:

> "The action to quiet title is clearly one to remove a cloud therefrom. It is neither petitory nor possessory, nor is it one in jactitation nor one to try title under Act 38 of 1908 (LSA–R.S. 13:5062). Having no codal or statutory background, it is an innovation of our jurisprudence. In an action to remove a cloud * * possession is not necessary in either plaintiff or defendant. A plaintiff may sue for the cancellation of a recorded deed, mineral lease or other recorded instrument which allegedly operates as a cloud on his title, and *the issue of title may be determined as incidental to plaintiff's right to have the alleged cloud removed."*

108 So.2d at 518. (Emphasis added.)

The plaintiffs have declined to follow the district court's suggestion, and allowed the state action to lie fallow during the pendency of this appeal. They say that they have done so because of their belief that only a suit against the State itself could produce an "adjudication of title" that would satisfy the terms of the escrow decree. They point out quite rightly that they can get a declaration of title only by bringing a petitory action, and that the State would be an indispensable party to such an action against a State lessee.[7] But the decree of the district court, as we read it *and as the district court itself reads it,* does not require a declaration of the plaintiffs' title by the state court as a condition precedent to distribution of the escrow fund; the decree speaks only of an *"adjudication"* of title. In Walmsley and Daigle the Louisiana Supreme Court has made it clear that there can be an adjudication of title incidental to cancellation of a state mineral lease, whether or not the State is joined. Indeed, the very terms of the decree, ordering Humble to pay the disputed royalties into the escrow fund "until such time as plaintiffs' title is *quieted* or defeated" (emphasis added), suggest resort to an action to quiet title.

In short, the district court has not required plaintiffs to do the impossible, or even the unreasonable. It has simply said: We prefer not to order payment of the deposited royalties while parts of the

---

6. The Mineral Board, leasing agent for the State, may be sued without its consent. LSA–Rev.Stat. 30:121. See also Walmsley v. Pan American Petroleum Corporation, 1963, 244 La. 513, 153 So. 2d 375; Daigle v. Pan American Production Company, 1958, 236 La. 578, 108 So. 2d 516; Texas Co. v. State Mineral Board, 1949, 216 La. 742, 44 So.2d 841.

7. Art. 3651, LSA–Code of Civil Procedure, provides:

   "The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right, against an-

other who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership."

   Official Revision Comment (b) under Art. 3651 says that the petitory action "must be brought directly against the adverse claimant of ownership, or if there is no adverse claim, against the person in possession." In a petitory action brought against an adverse lessee, the adverse lessor is an indispensable party. Kuchenig v. California Company, 5 Cir. 1965; Daigle v. Pan American Production Company, supra.

**48**

disputed water bottoms are covered by an adverse state lease now under attack by plaintiffs in state court. However, should the Louisiana court be so unimpressed with the State's title claim as to cancel the state lease, we would feel safe in ordering Humble to pay its lessors. Plaintiffs, the moving party both here and in the state court, should bear the burden of quieting their own title.

The judgment of the district court is affirmed.