BARHAM, Justice.
■Joseph A. Bienvenu, Jr., and his wife, Mrs. Lite Bi'Bienvenu,' brought this action against Robert Angelle for' damages alleged to have been caused by defamatory-remarks made by him about Mrs. Bienvenu. After a mistrial a second jury returned a verdict for the defendant, and the Court of Appeal affirmed. 211 So.2d 395. We granted writs on the application of the plaintiffs.
In 1962 Mrs. Bienvenu applied for the. position of Director of Public Welfare for St. Martin Parish. After passing an examination and meeting other requirements, she was placed on the eligibility list for the position. On November 15, 1962, she was notified that she had been selected for the position, and that her employment would begin November 26. The defendant Robert Angelle was a well known public figure in St. Martin Parish and at the time of the alleged defamation had for many years been a member of the Louisiana Legislature. It is obvious that he objected to Mrs. Bienvenu’s receiving the appointment of director, and that he tried to prevent her obtaining it. After Mrs. Bienvenu was informed-of her appointment but before a letter of confirmation was sent by Mrs. Mary Evelyn Parker, State Director of Public Welfare, the defendant Angelle went to Baton Rouge to discuss the appointment with Mrs. Parker. According to Mrs. Parker’s testimony, Angelle told her that Mrs. Bienvenu had abandoned somé school children in her charge and gone off with a man, that she-did not have-a good reputation in the community, and that “ *- * * this lady was a *189 lady of very poor reputation in the community as to character and morals * Angelle himself testified that he told Mrs. Parker that Mrs. Bienvenu had a bad reputation in her community. Later, George Hamner, an investigator for the Civil Service Commission, talked with Angelle, who again stated that Mrs. Bienvenu had a poor reputation in her community. Mrs. Bienvenu was notified that her appointment was cancelled, but after civil service proceedings and an appeal in the matter, In Re Bienvenu, 158 So.2d 213 (La.App. 1st Cir. 1963), her appointment was affirmed.
Plaintiffs base their suit for personal damages for defamation as well as for loss of income upon the allegation that the utterances made by Angelle to Mrs.'Parker and to Hamner were false and malicious. They urge a reversal of the Court of Appeal judgment and an award of damages by this court or, alternatively, a remand for a new trial by jury with proper instructions.
The plaintiffs, relators here, rely upon four alleged errors. They first urge error in the determination by both courts below that Mrs. Bienvenu was a public official as a matter of law. Although Louisiana has a long line of cases setting forth its law in regard to defamation, the United States Supreme Court in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and in subsequent decisions has set forth new criteria which supersede state law in defamation suits against “public officials”. If in fact Mrs. Bienvenu was a “public official”, these decisions and their rule of law apply. In the New York Times Co. case the court said:
“ * * * In deciding the question now, we are compelled by neither precedent nor policy to give any more zveight to the epithet ‘libel’ than we have to other ‘mere labels’ of state law. * * * It must be measured by standards that satisfy the First Amendment.
“ * * * The constitutional safeguard, we have said, ‘was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.’ Roth v. United States, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 [1506], * * *
“ * * *
“The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with ‘actual malice’- — -that is, with knowledge that it was false or with reckless disregard of whether it was false or not. * * * ” (Emphasis supplied.)
Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), held that an appointed employee of the county government who managed a recreation area was a public official within the meaning of New York Times Co. v. Sullivan, supra. In Rosenblatt the court said:
*191 “Turning, then, to the question whether respondent was a 'public official’ within New York Times, we reject at the outset his suggestion that it should be answered by reference to state-law standards. States have developed definitions of 'public official’ for local administrative purposes, not for purposes of a national constitutional protection. * * *
“ * * * It is clear, therefore, that the 'public official’ designation applies at the very least to those among the hierarchy of government employees who have, or who appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.”
According to the decision in In Re Bienvenu, supra, Mrs. Bienvenu’s appointment as Director of Public Welfare for St. Martin Parish was confirmed to be effective before the date of the alleged defamatory utterances.[1] The plaintiffs argue that Mrs.
Bienvenu’s employment under civil service with restrictions upon engaging in politics and speaking politically removed her from the category of a public official. There is no merit in such an argument, for it is one’s status and one’s power to manage affairs affecting the public which subject one to the federal rule.[2]
We hold that Mrs. Bienvenu was a “public official” when the alleged defamation occurred. Under the applicable law, as a public official she must prove that the defendant made a false statement “with ‘actual malice’ — that is, with knowledge that it was false or with reckless disregard of whether it was false or not”. New York Times Co. v. Sullivan, supra; Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125; Rosenblatt v. Baer, supra. Thus Angelle, like any private citizen, had a qualified privilege based upon the principle “ * * * that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials”. New York Times Co. v. Sullivan, supra. *193 Although Angelle enjoyed a qualified privilege in statements concerning the character and reputation of Mrs. Bienvenu, he did not have an absolute privilege which would allow him to make a defamatory statement with “actual malice” about this plaintiff.[3]
Plaintiffs next strongly urge that the Court of Appeal should not have rendered a judgment on the record when there had been serious and fatal errors of law in the trial judge’s instructions to the jury.
Plaintiffs contended before the appellate court and now contend before us that the trial judge erred in charging the jury that any statements made to George Hamner, an investigator of the Civil Service Commission, were absolutely privileged. This charge read:
“I further charge you that Title 14, Section 50 of the Louisiana Revised Statutes, in part pertinent to this litigation, provides:
•' “ ‘There shall be no prosecution for de- • famation in the following situations:
“‘(2) When the statement is made by a witness in a judicial proceeding, or in any other legal proceeding where testimony may be required by law, and such statement is reasonably believed by the witness to be relevant to the matter in controversy. * * ’
“Therefore, any statement made by Mr. Angelle to investigators of the Civil Service Commission in answer to questions put to him is privileged and cannot form, the basis of an action for slander.” (Emphasis supplied.)
The charge was erroneous for two reasons: First, a statute creating a privilege from criminal prosecution for defamation has no application to a civil proceeding for damages for defamation, and, more importantly, the charge conferred an absolute privilege upon Angelle’s communication to the Civil Service Commission’s investigator when in fact such a privilege did not exist.
It is true that communications made in judicial or quasi-judicial proceedings carry an absolute privilege. This protection is offered in such proceedings so that the witness, who is bound by his oath to tell the truth, may speak freely without fear of civil suit for damages for defamation. The privilege is extended to an administrative agency only when that agency is exercising judicial or quasi-judicial functions. Investigatory work in the field, such as was performed by Hamner, is not the exercise of an adjudicative or quasi-adjudicative function, for those who are questioned are not under oath or subject to *195 sanctions for making a false statement, and such investigations are not encompassed within quasi-judicial hearings or proceedings. Communications made during such an investigation are not accorded an absolute but only a qualified privilege, and the communication from Angelle to Hamner falls into this categor}'. The instruction that the communication to Hamner could not form the basis for defamation directed the jury to disregard one of the two defamatory utterances alleged as a basis for this suit, and granted an absolute privilege to the communication from Angelle to Hamner which did not exist in law.
Plaintiffs further assign as error the instruction to the jury that “He who asserts a claim for slander arising from a privileged communication, has the burden to prove that there was malice in fact, that the defendant was actuated by motives of personal spite or ill will, independent of the occasion on which the communication was made". (Emphasis supplied.) This language is found in some early cases in Louisiana, 'such as Gardemal v. McWilliams, 43 La.App. 454, 9 So. 106 (1891), and Buisson v. Huard, 106 La. 768, 31 So. 293, 56 L.R.A. 296 (1901). However, the requirement that one must show personal spite or ill will antedating and independent of the occasion of a defamatory communication which is qualifiedly privileged is not the law in the State of Louisiana, nor is it the rule which governs the qualified immunity of communications concerning public officials established by the United States Supreme Court. That rule, as previously stated, simply requires the plaintiff to prove, without benefit of presumption, that the false statement was made with actual malice — that is, with knowledge of its falsity or with wanton disregard of whether it was true or false. The instruction to the jury requiring a finding of motivation from spite or ill will was erroneous and prejudicial to the plaintiffs.
The majority of the Court of Appeal accorded no weight to the trial court, relied upon Article 7, Section 29, of the Louisiana Constitution, and reviewed the evidence de novo, stating: “By following this Constitutional mandate, any error of law by the trial court will be corrected.” [4]
While we recognize that appellate jurisdiction in Louisiana requires a review of law and fact, our Constitution assures that every individual, for every “injury done him”, has a right to an adjudication by some tribunal having original jurisdiction.[5] It additionally affords the right of appeal for review of that trial.
*197 A trial necessarily includes, along with fact-finding, an adjudication, a determination under the correct legal principles. Article 7, Section 1, of the Louisiana Constitution provides in part: “ * * * The judges of all courts shall refer to the law and adduce the reasons on which every definitive judgment is founded. * * * ” The trial court in Louisiana, whether judge alone or judge and jury, is not a mere assimilator of fact, is not a mere accumulator of evidence. The trial court is in the real essence a judicial tribunal which must receive evidence and pass upon it in the light of the correct law. When a jury is utilized as allowed and provided by statute, that jury must accept the law as given by the trial judge and apply it to the evidence. Therefore instructions to a jury should not be so erroneous as to deny a proper determination of facts and issues under the law. An appeal from such a proceeding tends to involve a trial de novo based upon the accumulated evidence, and for all practical purposes converts the appellate court into a court of original jurisdiction.
In Beal v. M’Kiernan, 6 La. 407 (1834), the court said:
“The power to remand a case, whenever this court thinks justice requires it, is general in the law which organized it. We have often exercised it. We have not, however, thought that every mistake of the first judge, in cases in which a jury had been asked, required us to remand. * * * [See cases cited.]
“None of the principles, which have guided us in these cases militates against the defendant in the present. It is most probable that, misled by the charge of the court, they did not attend to the plea of ratification, which if they respected the directions of the judge, was absolutely unimportant.
And in Robinson v. Landrum, 10 La.Ann. 539 (1855), this court said: “Under the circumstances we think the charge was calculated to mislead the jury, and the evidence is not such as to satisfy us that in the absence of such a charge, they would not have arrived at a different conclusion.”
*199 An appellate court must not substitute itself for the trial court with its particular functions. The instructions given to the jury by the trial judge in the present case were so erroneous that there is no assurance that the jury could make a legal determination of the issues before it. As similarly stated in the cases cited above, under a correct statement of the law this jury possibly would have reached a contrary conclusion.
While we adhere to the principle that every error in instructing a jury does not require a remand, we are convinced that the instructions to the jury in this case were so erroneous that there was not a proper judicial determination of the issues presented to it, and law and justice require us to remand.
Accordingly the judgment of the Court of Appeal and the trial court are reversed, and the case is remanded for a new trial not inconsistent with the views here expressed.
Assessment of costs is to await the final outcome of this litigation.
HAMITER, J., concurs in the decree.
McCALEB, J., concurs in the result.
HAMLIN, J., dissents, being of the opinion that this Court should decide this case on its merits.

. Were this not the case, we would have difficulty in distinguishing between an active applicant, candidate, or seeker of public office and an officeholder. Dyer v. Davis, 189 So.2d 678 (La.App.1st Cir. 1966), cert. den. 250 La. 533, 197 So.2d 79; Matassa v. Bel, 156 So.2d 250 (La.App.4th Cir. 1963), limited writs granted 245 La. 95, 157 So.2d 235; 246 La. 294, 164 So.2d 332.

. Thompson v. St. Amant, 250 La. 405, 196 So.2d 255, rev’d on other grounds 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, wherein we held a deputy sheriff was a public official. Schneph v. New York Post Corporation, 16 N.Y.2d 1011, 265 N.Y.S.2d 897, 213 N.E.2d 309, where a municipal civil service attorney was held to be a public official. In Henry v. Collins, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965), an appointed chief of police and in Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), an appointed recreational area director were held to bo “public officials” by the United States Supreme Court.

. We note that Angelle could additionally claim a qualified privilege urging a moral obligation to communicate with Mrs. Parker and an even stronger obligation to respond to Hamner. But a qualified privilege is accorded no greater protection when a number of reasons can be advanced for it.

. Article 7, Section 29, states in part: “ * # * and all appeals sliall be both upon the law and the facts * * (Emphasis supplied.)

. Article 1, Section 2, of the Louisiana Constitution provides: “No person shall be deprived of life, liberty or property, except by due process of law. * * * ” *197 Tliat provision has been interpreted to mean that a right of action for damages for wrong done to person or property is “property”. State ex rel. Muslow v. Louisiana Oil Refining Corp. (La.App.), 176 So. 686, motion denied 177 So. 476, affirmed Arkansas Fuel Oil Co. v. State of Louisiana ex rel. Muslow, 304 U.S. 197, 58 S.Ct. 832, 82 L.Ed. 1287. And Article 1, Section 6, of that Constitution provides: “All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay.” By legislative enactment, Code of Civil Procedure Article 1731, we have provided for the right of trial by jury in civil cases, and although the authority is statutory, trial by jury must be protected with great respect by the courts. Article 7, Section 35, of the Constitution provides that the district courts are the basic courts of original jurisdiction.