393 So.2d 135 (1980)
Derrell J. HEBERT, Plaintiff-Appellant,
v.
George E. BRAZZEL et al., Defendant-Appellee.
No. 7757.
Court of Appeal of Louisiana, Third Circuit.
July 22, 1980.
*136 Francis J. Mooney, Jr., New Orleans, for plaintiffs-appellants.
Plauche, Smith, Hebert & Nieset, Allen L. Smith, Jr., Woodley, Barnett, Cox, Williams & Fenet, James E. Williams, Lake Charles, Voorhies & Labbe, Patrick A. Juneau, Jr., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Frank X. Neuner, Jr., Mouton, Roy, Carmouche, Bivens & Kraft, Harmon F. Roy, Allen, Gooch & Bourgeois, Joel E. Gooch, Lafayette, Landry, Watkins & Bonin, Alfred S. Landry, Jr., New Iberia, for defendant-appellee.
Before FORET, STOKER and LABORDE, JJ.
LABORDE, Judge.
This personal injury suit was filed by the original plaintiff, Derrell J. Hebert (hereinafter sometimes referred to as "decedent"), against certain executive officers of his employer, other alleged tortfeasors and their insurers, and NIBCO, Inc. (hereinafter referred to as "NIBCO"). NIBCO was alleged to be the manufacturer of a defective valve which caused plaintiff's injuries.
The original plaintiff died on May 26, 1977, being survived by his widow, Maxine Romero Hebert, and his two minor children, Derrell J. Hebert, Jr. and Shawn Elliot Hebert. Decedent's survivors were substituted as plaintiffs in this case. Decedent's survivors filed a separate wrongful death suit under docket number 41,041 of the Sixteenth Judicial District Court, Parish of Iberia, bearing docket number 7758 of this court. Both suits were consolidated for trial by the District Court. We render a separate decision in Romero v. Brazzel, 393 So.2d 141 (La.App. 3rd Cir. 1980).
Liberty Mutual Insurance Company intervened for subrogation as to the medical expenses and workmen's compensation payments made to the decedent. The amount of the subrogation claim was stipulated to by plaintiffs and NIBCO.
*137 All defendants except NIBCO were dismissed prior to trial by way of settlement or by summary judgment. The case went to trial on October 15, 1979 as a products liability case and ended on October 18, 1979 with the rendition of a jury verdict by special interrogatory. The jury unanimously exonerated NIBCO by answering the interrogatories posed as follows:
1. Was the valve in question defectively designed or manufactured by NIBCO?
____ or 12 
yes no
2. Was the valve in normal use at the time of its failure?
____ or 12 
yes no
3. Was the valve unreasonably dangerous in normal use?
____ or 12 
yes no
4. If the valve was defectively designed or manufactured by NIBCO was that defect the proximate cause of Derrell Hebert's injury and death?
____ or 12 
yes no
5. Did Derrell Hebert assume the risk of his injuries?
 12 or _____
yes no
6. What amount of damages, if any, do you find Maxine Romero Hebert entitled to recover?
$ none 
7. What amount of damages, if any, do you find Derrell J. Hebert, Jr. entitled to recover?
$ none 
8. What amount of damages, if any, do you find Shawn Elliot Hebert entitled to recover?
$ none 
The jury verdict was made the judgment of the District Court on November 6, 1979 and plaintiffs have perfected this devolutive appeal.
This appeal does not raise any issues against the defendants dismissed prior to trial. The appeal is solely concerned with plaintiffs' products liability claim against NIBCO.
Plaintiffs contend that decedent was working as a driller for Brazzel Well Service, Inc. He was seriously injured on May 18, 1976 when struck in the upper abdomen by a valve that was forced by air pressure from a water tank, and died as a result of those injuries on May 26, 1977.
Plaintiffs contend that the valve was defectively manufactured by NIBCO and that the defects caused the injuries suffered by decedent. Plaintiffs further contend that NIBCO failed to warn users of the valve, such as decedent, as to the danger of using such a valve if the handle was broken off, which danger was known only to defendant.
Plaintiffs contend that the jury findings were manifestly erroneous and that certain rulings of the trial court resulted in the manifestly erroneous jury verdict.
Defendant manufacturer denied the defect and claimed that decedent assumed the risk of his injuries.
The facts reveal that decedent was a driller on Brazzel Rig # 3 and the other crew members were Kim Hebert (the decedent's brother), Jimmy Guidry and Francis Dore. Kim Hebert was the derrickman and Guidry and Dore were the floormen. The rig had been on location about one week prior to the accident.
The only rig components involved in the case are the water tank and the fitting attached to the tank.
Air pressure from the compressor on the rig was sent through the top valve of the tank forcing water out of the bottom valve and back to the rig to cool the brakes on the drawworks.
The crew was getting ready to put water in the tank. Decedent, who was described by all lay witnesses as being a competent, experienced oilfield driller, disconnected the hose from the tank and opened the 1" NIBCO valve with a 24" long pipe or Stilson wrench. (The 2¾ inch diameter turning handle had been broken off prior to this time). Decedent unscrewed the valve with the Stilson wrench, put the wrench down, and backed it out by hand when the accident happened.
The record reflects that decedent, as driller, had the authority and responsibility to repair or replace all broken parts on Brazzel *138 Rig # 3. Since the rig operated only during daylight hours and the crew returned daily to the Brazzel warehouse, decedent had the daily opportunity to replace or repair any broken or defective equipment on the rig.
Plaintiffs assign the following issues on appeal:
1. WHETHER OR NOT THE STEM OF THE VALVE THAT INJURED THE DECEDENT WAS DEFECTIVELY DESIGNED OR MANUFACTURED BY THE DEFENDANT, NIBCO.
2. WHETHER OR NOT THE VALVE WAS IN NORMAL USE.
3. WHETHER OR NOT THE VALVE WAS UNREASONABLY DANGEROUS IN NORMAL USE.
4. DID THE DEFECT CAUSE DECEDENT'S INJURIES? ALTERNATIVELY, DID DEFENDANT'S FAILURE TO WARN OF AN UNREASONABLE DANGER CAUSE DECEDENT'S INJURIES?
5. WHETHER OR NOT THE DECEDENT ASSUMED THE RISK OF HIS INJURIES.
6. WHETHER OR NOT MR. EDWARDS AND MR. HEJL SHOULD HAVE BEEN QUALIFIED AS EXPERT WITNESSES.
7. WHETHER OR NOT DEFENDANT SHOULD HAVE BEEN PERMITTED TO INTRODUCE EVIDENCE OF TESTING MADE UNDER NUMEROUS CIRCUMSTANCES DIFFERING FROM THE FACTS OF THIS CASE.
8. WHETHER OR NOT THE TESTIMONY OF A DEAD EXPERT WITNESS MAY BE READ TO THE JURY.
Appellant's eight issues can be grouped into two categories. The first consists of issues 1-5 as listed above. These issues are factual in nature with a collateral issue of the correctness of the jury instructions. The second category consists of the remaining issues 6-8.
Our review of factual issues is controlled by the principle established by the Supreme Court in Canter v. Koehring Company, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). In those two cases, the standard of review to be applied to factual determinations by the trier of fact, whether judge or jury, was declared to be manifest error. Manifest error was defined as meaning clearly wrong. Therefore, our review of the factual determinations consists of a review of the record to establish whether or not they are clearly wrong.
After a careful reading of the record and close observation of the arguments of counsel, we do not believe that the jury was clearly wrong.
Appellant also suggests that the trial judge incorrectly charged the jury as to the law.
The first suggested error is that the judge charged the jury that plaintiff must prove both a manufacturing defect and that the product was unreasonably dangerous in normal use. The trial judge instructed the jury that:
a party claiming injury because of such an alleged defect has the burden of proving the following: First, that the product was defectively designed or manufactured; second, that at the time of its failure it was in normal use for which it was designed; third, that it was unreasonably dangerous in that normal use; and fourth, that the injuries were caused by the defect.
Later, he explains to the jury that:
If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker and its manufacturer and processing for the manufacturer is presumed to know of the vices and the danger in the things he makes whether or not he has actual knowledge of them. There is a duty upon a manufacturer to know all of the dangerous qualities of the thing which he manufactures, if any, and he is responsible to make those dangers, *139 if any, known to the parties who purchase or use his products, and this is so, even though the product, itself, is not inherently dangerous.
We believe that the effect of the instructions as a whole, as the sum of the parts, is a correct statement of the law. Therefore, we find that the charge is legally sufficient in that the jury had a clear understanding of the law. Bienvenu v. Angelle, 223 So.2d 140 (La.1969); Reeves v. Gulf States Utilities Co., 312 So.2d 118 (La.App. 1st Cir. 1975). In support of this finding we note that the interrogatories to the jury asked them whether the valve was defective and whether it was dangerous in normal use in separate questions. Additionally, we see a distinct similarity between the trial judge's instructions and certain language found in Weber v. Fidelity & Casualty Ins. Co. of N. Y., 250 So.2d 754 (La.1971).
The second instruction that appellant suggests is erroneous deals with the decedent's assumption of the risk. We need not reach this issue since a decision on assumption of risk is necessary only if defendant is at fault. Since we do not reverse the jury's determination that defendant is not at fault, there is no issue.
That last group of issues deals with the expert witnesses. First, appellant suggests that neither of defendant's expert witnesses at trial should be accepted as experts. We have reviewed the qualifications of both Mr. Edwards and Mr. Hejl. We find no abuse of the trial judge's discretion in accepting these two persons as expert witnesses. Second, appellant suggests that they are prevented from testifying as experts due to their status as employees and shareholders of defendant. C.C. Art. 2282 provides as follows:
The circumstance of the witness being a relation, a party to the cause, interested in the result of the suit, or in the actual service or salary of one of the parties, is not a sufficient cause to consider the witness as incompetent, but may, according to the circumstances, diminish the extent of his credibility.
There is no statutory bar to the witnesses being qualified as experts. The effect of their employment and stock ownership goes to the weight of their testimony, not their competency to testify.
Appellant urges that the testing performed by the experts is inadmissible evidence as being hearsay evidence. There is a dearth of jurisprudence in Louisiana on this issue. Under the annotation "Evidence" in Corpus Juris Secundum, vol. 32, we find the following:
§ 587.Admissibility of Evidence
Evidence of the results of an experiment, whereby the conditions of an occurrence are artificially created, may, in the discretion of the court, be admissible when relevant to prove an issue in the case and more satisfactory than oral testimony, provided the experiment was fairly and competently conducted.
* * * * * *

Competency and fairness of experimenter. As a foundation for the introduction of evidence of experiments, it must be shown, among other things, that the person who makes the experiment is competent to do so, and that the experiment was honestly and fairly made.
* * * * * *

Ex parte experiments. The fact that experiments, evidence of which is sought to be introduced, were made ex parte, and without notice to the adverse litigant, does not render the evidence incompetent, but lessens its probative value, as discussed infra § 592; and evidence of experiments should not be excluded because they were such as were wholly within the power of one party to make, and wholly without the power of the other party.
* * * * * *
§ 589.In Support or Explanation of Opinion Evidence
Where the opinion of an expert is admissible, the expert witness may testify as to experiments which form the basis thereof, provided the conditions of the experiment are sufficiently similar to those involved in the particular case.

*140 It is very generally held that a skilled observer or an expert witness who has given his opinion in evidence may also be permitted to testify as to the ground of the opinion expressed, which frequently includes evidence of experiments made during the course of his investigation of the subject to which his testimony relates. It has, however, been intimated that where the opinion of a witness is not admissible because of lack of sufficient qualification, evidence of evidence of experiments offered in support of it will not be received. Moreover, where conditions are so dissimilar to those involved in the particular case as to render evidence of experiments incompetent as substantive evidence, in accordance with the rules discussed infra § 590, evidence thereof is inadmissible even though it is offered under the guise of a reason for the opinions of witnesses which have been received.
Where an opinion is in fact based on the general experience of the expert, rather than on the result of the experiment or test, evidence as to such experiment or test should not be admitted.
§ 590.Similarity of Conditions
Evidence of an experiment is inadmissible unless the circumstances under which it was made were substantially similar to the circumstances prevailing at the time of the occurrence involved in the controversy.
Where a party alleges that a certain result did or did not follow from certain conditions, it is permissible for him, in support of the assertion, to introduce evidence of experiments made under substantially similar conditions; but in order that an experiment possess sufficient probative value to warrant the admission of evidence thereof, it is necessary that the circumstances under which the experiment is made should be similar to the circumstances prevailing at the time of the occurrence involved in the controversy, especially if the conditions are more favorable to the party offering the evidence. Depending on the circumstances in each case, an experiment may be inadmissible because of the lapse of time making the evidence too remote or effecting a change in conditions.
It is not necessary, however, that the conditions should be exactly identical; and the lack of exact identity affects only the weight and not the competency of the evidence, provided that there is a reasonable or substantial similarity, that is, that there is such a degree of similarity that evidence of the experiments made will accomplish the desideratum of assisting the jury to an intelligent consideration of the issues of fact presented.
The burden is on the party offering the evidence to show similarity in essential conditions; and preliminary proof of identity of conditions should be received. It is for the court, in its discretion, to determine whether the conditions are sufficiently similar to warrant admission of the evidence.
We find no abuse of discretion by the trial judge in admitting the testimony of the testing and we find the judge's decision proper under the above principles.
The last issue is the admissibility of the deposition of Gaylord Cox, an expert witness hired by appellant. Mr. Cox died prior to trial and his deposition was offered by defendant. Appellant suggests two errors: 1) the law does not permit the introduction into evidence of a deposition of a dead expert witness, and 2) objectionable testimony in the deposition. We affirm the trial court's ruling. We find no law prohibiting the introduction of the deposition and find that our law readily allows the introduction of the deposition of any dead witness. See C.C.P. Art. 1450. Further, the trial judge allowed plaintiff and defendant the right to object to any testimony they felt improper prior to reading of the deposition. He further gave counsel the opportunity to object to any part during the reading. (Record, p. 1424-5). Counsel for appellant failed to object to any of the specific portions which he cites as error during the reading and only objected to one portion during the deposition. We note he did not insist on a ruling thereon at trial.
*141 We have carefully reviewed the portions read to the jury and the trial judge's instructions to the jury. We hold that the trial judge did not abuse his discretion in allowing it to be read as the prejudicial effect, if any, does not outweigh the probative value of the testimony.
Accordingly for the above reasons, the judgment of the trial court is affirmed in all respects. Costs of this appeal are taxed to appellant.
AFFIRMED.
FORET, J., concurs in the result.