| ¡.EDWARDS, Judge.
Plaintiff/ Appellant, James Connolly, appeals from the trial court’s ruling which granted defendant, Robert Stone’s, Exception of No Cause of Action in a suit for defamation. Connolly asserts that the trial court erred in three ways: 1) By granting the exception as a matter of law; 2) By finding that communications made by Stone were subject to an absolute immunity from claims for defamation, and; 3) In finding, based on the plaintiffs petition, that a letter written about Connolly by Stone served as Stone’s testimony at a hearing before the Jefferson Parish Board *980 of Election Supervisors. For the following reasons, the judgment of the trial court is affirmed.
This appeal arises from a suit for defamation filed by James Connolly, (“Connolly”), against Robert Stone, (“Stone”), regarding communications that Stone made to the Jefferson Parish Board of Election Supervisors about Connolly, in respect to Connolly’s performance of his duties as a Jefferson Parish Lpoll commissioner. Connolly, a “poll Commissioner in Charge”, first alleges that Stone made comments to the Deputy Clerk for Elections in Jefferson Parish about acts Connolly committed during an election held on March 27, 1999. While the substance of these alleged verbal comments are not part of the petition, Connolly asserts that Stone’s “false and unsubstantiated” remarks led to Connolly’s suspension from the position, pending a hearing by the Board of Election Supervisors.
On November 2, 1999, the Jefferson Parish Clerk of Court, and Chairman of the Jefferson Parish Board of Election Supervisors, Mr. Jon Gegenheimer, sent a letter to Stone, and others who had worked with Connolly during the March 27, 1999, election. The letter stated that the Board would meet shortly to discuss whether Connolly should continue as a Jefferson Parish poll commissioner in light of complaints about his conduct. The letter further informed that participation was not mandatory, but that “those who have voiced complaints of misconduct must be able to present their complaints in this more formal atmosphere ... in order that the board may act on those complaints.”
On November 4, 1999, Stone sent a written reply to Mr. Gegenheimer, informing him that he would not be able to attend the hearing, and that therefore he felt it was appropriate to submit his observations about Connolly’s conduct on March 27, 1999, in writing. On November 17, 1999, the Jefferson Parish Board of Election Supervisors met to determine Connolly’s qualification status as a poll commissioner pursuant to LSA-R.S. 18:434. At the hearing, Stone’s letter was introduced in lieu of his testimony and attached to the record of the proceeding. The Board decided to allow Connolly to retain his position as a Jefferson Parish poll commissioner.
|4On November 2, 2000, Connolly filed the instant suit for defamation against Stone for his alleged comments, and the letter that he sent to the Jefferson Parish Board of Election Supervisors. Stone filed both an Answer and an Exception of No Cause of Action, asserting that his communications with the Board were subject to an absolute privilege since the proceeding before the Board was quasi-judicial in nature. On May 8, 2001, the trial court heard Stone’s exception, subsequently ruled that the letter and its contents were absolutely privileged, and dismissed Connolly’s suit. Connolly timely filed this appeal.
LAW AND ANALYSIS
An appellate court reviews a trial court’s ruling sustaining an exception of no cause of action de novo.[1] The purpose of this exception is to determine whether the law affords the plaintiff a remedy under the facts alleged in his petition.[2] In considering the exception, all reasonable inferences are made in favor of the non-moving party and all well-pleaded facts in the petition are accepted as true.[3] The moving *981 party has the burden of showing that the plaintiff has not stated a cause of action. The exception must be overruled, unless plaintiff has no cause of action under any evidence admissible under the pleadings.[4]
In his first assignment of error, Connolly asserts, citing Farria v. La Bonne Terrebonne of Houma, Inc.[5] that the trial court used Stone’s exception of No Cause of Action to, in effect, grant summary judgment on the issue of Stone’s immunity. The court in Fama addressed the issue of qualified immunity of communications made by employers about an employee, and held that the protection afforded an employer by the defense of qualified privilege may be raised in a motion for summary judgment, but could not be raised on an exception of no cause of action.[6] We find that Fama is distinguishable from the present case in one important respect: the alleged remarks, as will be discussed shortly, were made to a quasi judicial entity, and therefore would have qualified for an absolute privilege. The jurisprudence shows that Louisiana courts have upheld a trial court’s determination to grant Exceptions of No Cause of Action in defamation cases, where absolute immunity for communications to a judicial or quasi-judicial entity are at issue.[7] Accordingly, we find appellant’s first assignment of error to be without merit.
In his second assignment of error, Connolly asserts that the trial court erred in finding that Stone’s conduct was subject to an absolute immunity. In this case, Connolly has filed a suit for defamation. The elements of an action for defamation are: (1) defamatory words, (2) publication, (3) falsity, (4) malice, actual or implied, and (5) resulting injury.[8] We do not dispute the trial court’s finding that Connolly’s petition, if read liberally, does allege a cause of action in | fidefamation. In Bienvenu v. Angelle[9] however, the Louisiana Supreme Court explained how an absolute privilege exists against defamation for communications made in judicial or quasi-judicial proceedings.
“It is true that communications made in judicial or quasi-judicial proceedings carry an absolute privilege ... The privilege is extended to an administrative agency only when that agency is exercising judicial or quasi-judicial functions.
Black’s Law Dictionary, Fifth Edition, defines “quasi judicial” as:
A term applied to the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature.
LSA R.S. 18:434, E(2) provides for the discernment of qualifications for polling commissioners by the parish board of election supervisors:
Upon a finding by the parish board of election supervisors that a certified commissioner has performed his duties in a *982 negligent manner, after appropriate hearing and opportunity for the commissioner to be heard, the board shall disqualify the commissioner from service as a commissioner ...
In this case, acting on the statutory mandate, the Jefferson Parish Board of Election Supervisors investigated Connolly to determine his qualifications as a polling commissioner. We find, therefore, that the Jefferson Parish Board of Election Supervisors, as they conducted their inquiry of Connolly to determine the veracity of the allegations against him, exercised a quasi-judicial function.
Connolly alleges in his petition that Stone’s letter, which was sent to the Board of Election Supervisors in connection with their investigation, forms part of the basis for the alleged defamatory conduct perpetuated by Stone. In Goldstein v. Serio,[10] the Louisiana Supreme Court found that an alleged defamatory letter sent to the Louisiana State Bar Association by an attorney’s former client carried an absolute privilege, because a disciplinary proceeding conducted by the Committee on Professional Responsibility is much like a judicial proceeding. Similarly, as previously noted, in this case the Jefferson Parish Board of Election Supervisors investigated Connolly to determine his qualifications as a polling commissioner, which included the quasi judicial function of ascertaining facts relative to allegations of negligence. Stone’s letter was sent to the Jefferson Parish Board of Election Supervisors, within what can be deemed the scope of their quasi judicial role. Therefore, in accordance with Bienvenu and Goldstein, we find no error in the trial court’s finding that Stone’s letter was subject .to an absolute privilege.
In regard to any statements that Stone may have made to third parties pri- or to the hearing, the trial court noted, “[I]t is the opinion of this Court that defendant’s complaints were to those third parties charged with the duty to properly investigate and handle such claims. For those remarks made to these third parties which prompted an investigation and the request for a hearing, Mr. Stone enjoys an absolute immunity.” The trial court’s finding is in accord with the holding of Lauga v. McDougall,[11] in which the court held that comments made by a defendant both during a federal investigation of the plaintiffs were subject to an absolute immunity, as long as the defendant was a non-party or non-litigant to the proceedings. While obviously, the investigation of Connolly did not reach the stature of a federal investigation, Stone was still a non-party and a | snon-litigant to the hearing conducted by the Board. We therefore find that the trial court correctly held that any statements made by Stone to third persons in connection with the investigation of Connolly are also subject to an absolute privilege as well.
In his third assignment of error, Connolly asserts that the trial court erred in finding that complaints voiced to third parties investigating claims as well as the typewritten letter communicating complaints to the Clerk of Court served as testimony that Stone would have given at the hearing before the Board.
Black’s Law Dictionary, Fifth Edition, defines the term “testify” to mean, “to make a solemn declaration, under oath or affirmation, in a judicial inquiry, for the purpose of establishing or proving some fact.” Stone’s communications with the Board regarding Connolly were not made *983 under oath, nor was his letter to the Board notarized. To that end, we disagree with the trial court’s finding that Stone’s communications to the Board constituted “testimony”, per se. We find, however, that the trial court’s error in this regard does not warrant a reversal on its finding of absolute privilege. As previously discussed, the letter and other communications that Stone made still would have qualified for absolute privilege by virtue of the fact that these acts took place with an administrative agency who was exercising a quasi judicial function.
For the foregoing reasons, we affirm the judgment of the trial court which granted Stone’s exception of No Cause of Action.
AFFIRMED.

.Taylor v. Shoney’s, Inc., 98-810 (La.App. 5th Cir. 1/26/99), 726 So.2d 519; writ denied, 99-0540 (La.1999), 740 So.2d 635.

.City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748.

.Id.

. Schulingkamp v. Ochsner Clinic, 99-558 (La.App. 5 Cir. 1/25/00), 752 So.2d 275, 278; writ denied, 2000-0618 (La.2000), 760 So.2d 348; appeal dismissed, 00-1129 (La.App. 5 Cir.2000), 777 So.2d 550.

. 476 So.2d 474, (La.App. 1 Cir.1985).

. Id. at 475.

. See Goldstein v. Serio, 496 So.2d 412 (La.App. 4th Cir.1986); writ denied 501 So.2d 208, (La.1987); writ denied 501 So.2d 209, (La.1987); Lauga v. McDougall, 463 So.2d 754 (La.App. 4th Cir.1985).

. Albarado v. Abadie, 97-478 (La.App. 5 Cir. 11/12/97), 703 So.2d 736, 739, writ denied, 97-C-3081 (La.2/13/98), 709 So.2d 756.

. 254 La. 182, 223 So.2d 140, (1969).

. 496 So.2d 412 (La.App. 4th Cir.1986); writ denied 501 So.2d 208, (La.1987); writ denied 501 So.2d 209, (La.1987).

. 463 So.2d 754 (La.App. 4th Cir.1985)