GRAVOIS, J.
*115 Plaintiff/appellant, Corey Lambert, Sr., appeals the trial court's August 21, 2018 judgment which granted defendants' exception of no cause of action and dismissed Mr. Lambert's defamation suit against defendants with prejudice. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On April 18, 2018, Corey Lambert, Sr., former head football coach and assistant principal for discipline at John Ehret High School in Marrero, Louisiana, filed a suit for defamation naming the following members of the Jefferson Parish Public School System as defendants: Glenn Delcarpio, Sheena Smith, Daniel Baker, Maria Landry, Denise Carpenter, Darvell Edwards, and Carl Nini. The following facts and allegations were gleaned from Mr. Lambert's petition.
On April 18, 2017, Mr. Lambert and Maria Landry, principal of John Ehret, were called to a special conference at the Jefferson Parish School Board's Central Office regarding allegations that Mr. Lambert knowingly played an ineligible student-athlete and participated in sending a falsified document identified by the Louisiana High School Athletic Association. Mr. Lambert was cleared of those allegations, however, and returned to his coaching duties.
Subsequently, on April 19, 2017, Sheena Smith, John Ehret's Athletic Director, complained to Assistant Principal Glenn Delcarpio that she was concerned that Mr. Lambert might play an ineligible student. In response, Mr. Delcarpio contacted a former John Ehret co-worker, Carl Nini, who was serving as Athletic Director for the Jefferson Parish Public School System. Mr. Delcarpio was told by Mr. Nini to collect "letters of complaint" about Mr. Lambert. Mr. Delcarpio personally contacted John Ehret employees for "statements against Mr. Corey Lambert." On April 20, 2017, ten letters were given to Mr. Nini and Denise Carpenter, Chief of Student Support for the Jefferson Parish Public School System. Soon thereafter, Ms. Carpenter discussed the allegations against Mr. Lambert with Jefferson Parish Schools Superintendent Isaac Joseph. Ms. Carpenter was instructed by Superintendent Joseph to involve Darvell Edwards, the Executive Director of Principal Performance, in the investigation.
On April 24, 2017, Mr. Lambert met with Ms. Landry and Mr. Delcarpio regarding unapproved purchase orders, allegations of Mr. Lambert harassing teachers, and allegations of football players not being disciplined for serious offenses. Thereafter, Mr. Lambert was suspended from his job. A due process hearing was conducted on June 6, 2017 by the School System's Department of Human Resources regarding the various allegations against Mr. Lambert; it was recommended that Mr. Lambert be terminated. By letter dated August 8, 2017, Superintendent Joseph informed Mr. Lambert that he was being terminated for "willful neglect of duty and dishonesty." Subsequently, a state mandated post-termination hearing took place in October and November 2017 before a hearing officer.
Mr. Lambert's defamation suit alleges that the false allegations made against him resulted in his termination. Further, he asserts that defendants' false allegations against him were communicated to third parties in several ways. The petition alleges that Mr. Delcarpio, Ms. Carpenter, Ms. Smith and Ms. Landry defamed Mr. Lambert with false and malicious testimony *116 during the public post-termination hearing. Additionally, Mr. Lambert alleged that "[f]alse and malicious letter [sic ] written and solicited by Daniel Baker [an English teacher at John Ehret] were communicated to third parties and the media via hearings held October and November 2017." Mr. Lambert contended that the false and defamatory statements solicited by Mr. Delcarpio were introduced to third parties and the media via letters and testimony presented at the public hearing. Finally, Mr. Lambert alleged that defendants injured his reputation and livelihood in violation of La. C.C. art. 2315 and his 14th Amendment liberty interest in his good name and reputation.
In response to the petition, defendants filed an exception of no cause of action, asserting that their statements and their testimony were protected by an absolute privilege since they were made during a quasi-judicial hearing or to a quasi-judicial officer charged with the duty to ascertain facts relative to the allegations of employee misconduct committed by Mr. Lambert. Specifically, defendants argued that the Jefferson Parish School Board is an administrative agency that has established written policies for its own governing, including a policy on investigations. Considering this, defendants argued that the Jefferson Parish School Board was mandated to investigate Mr. Lambert and was exercising a quasi-judicial function during its investigation.
Following a hearing on August 21, 2018, the trial court issued a written judgment sustaining defendants' exception of no cause of action and dismissing Mr. Lambert's case with prejudice. This appeal followed.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, Mr. Lambert argues that the trial court erred in finding that defendants' alleged defamatory statements were subject to an absolute privilege based on testimony made during a quasi-judicial hearing because the hearing occurred in October and November 2017 and the statements were made prior to the hearing in April 2017 and published in media reports in August 2017. He argues that defendants' "own investigation" was based on the ten defamatory letters collected by Mr. Delcarpio after his private meeting with Ms. Smith.
Defendants respond that the absolute privilege applies not only to statements made during a quasi-judicial hearing, but also to statements made to an administrative officer while exercising the quasi-judicial functions of conducting a pre-hearing investigation. They argue that the April 2017 statements were made to Mr. Delcarpio, an employee of the Jefferson Parish School Board, during the School Board's pre-hearing investigation into the allegations of employee misconduct committed by Mr. Lambert. Thus, defendants argue, the contents of the April 2017 statements are protected by an absolute privilege.
The exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Khoobehi Props., LLC v. Baronne Dev. No. 2, L.L.C. , 16-506 (La. App. 5 Cir. 3/29/17), 216 So.3d 287, 297, writ denied , 17-0893 (La. 9/29/17), 227 So.3d 288. The appellate court reviews a trial court's ruling sustaining an exception of no cause of action de novo because the exception raises a question of law and the court's decision is based solely on the sufficiency of the petition. Id . The peremptory exception of no cause of action is triable on the face of the pleadings, and, for purposes of resolving issues raised by the exception, *117 the well-pleaded facts in the petition must be accepted as true. Id . Because Louisiana uses a system of fact pleading, a plaintiff is not required to plead a theory of recovery in his petition; however, mere conclusions of the plaintiff unsupported by facts will not set forth a cause of action. Id .
Defamation is a tort involving an invasion of a person's interest in his reputation and good name. Costello v. Hardy , 03-1146 (La. 1/21/04), 864 So.2d 129, 139 ; Sassone v. Elder , 626 So.2d 345, 350 (La. 1993). The essential elements of a defamation action are (1) defamatory words, (2) publication or communication to a third party, (3) falsity, (4) malice (actual or implied), and (5) resulting injury. Huxen v. Villasenor , 01-288 (La. App. 5 Cir. 9/25/01), 798 So.2d 209, 212. If any one of the required elements is not sufficiently proven, the cause of action fails. Costello , 864 So.2d at 140. Even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified. Costello , 864 So.2d at 141.
Under Louisiana law, communications made in a judicial or quasi-judicial proceeding carry an absolute privilege. Bienvenu v. Angelle , 254 La. 182, 223 So.2d 140, 144 (1969) (overruled on other matter, Gonzales v. Xerox Corporation , 254 La. 182, 320 So.2d 163 (1975) ). This protection is offered in such proceedings so that the witness, who is bound by his oath to tell the truth, may speak freely without fear of civil suit for damages for defamation. Bienvenu , supra .
Defendants rely on this Court's opinion in Connolly v. Stone , 01-929 (La. App. 5 Cir. 1/15/02), 807 So.2d 979, in support of their argument. There, the plaintiff, James Connolly, filed a defamation suit against Robert Stone regarding communications that Mr. Stone made about Mr. Connolly to the Jefferson Parish Board of Election Supervisors in respect to Mr. Connolly's duties as a Jefferson Parish poll commissioner. It was alleged that Mr. Stone made comments to the Deputy Clerk of Elections in Jefferson Parish about acts that Mr. Connolly committed during an election that was held on March 27, 1999. Mr. Connolly asserted that these statements led to his suspension, pending a hearing by the Board of Election Supervisors. The Jefferson Parish Clerk of Court/Chairman of the Jefferson Parish Board of Election Supervisors notified Mr. Stone and others who had worked with Mr. Connolly that the Board would be meeting to discuss Mr. Connolly's future and requested that they be present to voice their complaints in "this more formal atmosphere." Mr. Stone sent a written reply stating that he would not be able to attend the hearing, but would submit his observations about Mr. Connolly's conduct in writing. At the hearing, Mr. Stone's letter was introduced in lieu of his testimony and was attached to the record of the proceeding. The Board ultimately decided to allow Mr. Connolly to remain in his position. Thereafter, Mr. Connolly filed a defamation suit against Mr. Stone for his alleged comments and letter. In response, Mr. Stone filed an exception of no cause of action which the trial court sustained, finding the letter and its contents were absolutely privileged. Id . at 980.
On appeal, this Court cited Bienvenu , supra , where the Louisiana Supreme Court stated that the absolute privilege is extended to an administrative agency only when it is exercising judicial or quasi-judicial functions. This Court further considered the definition of "quasi-judicial" as:
A term applied to the action, discretion, etc., of public administrative officers or *118 bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature.
Connolly , 807 So.2d at 981 (quoting Black's Law Dictionary, Fifth Edition).
In Connolly , this Court found that as the Jefferson Parish Board of Election Supervisors, acting on a statutory mandate, conducted their inquiry of Mr. Connolly to determine the veracity of the allegations against him, they were exercising a quasi-judicial function. Id . at 982. The Court went on to state that the investigation into Mr. Connolly included the "quasi-judicial functions of ascertaining the facts relative to allegations of negligence." The letter written by Mr. Stone was sent to the Jefferson Parish Board of Election Supervisors "within what can be deemed the scope of their quasi-judicial role." Thus, this Court found no error in the trial court's finding that Mr. Stone's letter was subject to an absolute privilege. Further, this Court agreed with the trial court in its finding that the statements Mr. Stone may have made to third parties in connection with the investigation of Mr. Connolly were subject to an absolute privilege as well as they were made by a non-party and a non-litigant to the hearing conducted by the Jefferson Parish Board of Election Supervisors. Id .[1]
In the present case, upon review, we find the School Board had the authority to exercise quasi-judicial functions. See La. R.S. 17:81. The petition alleges that after a complaint was brought about Mr. Lambert by Ms. Smith, Mr. Delcarpio, the assistant principal, was told by Mr. Nini, the Athletic Director of the Jefferson Parish Public School System, to "collect letters of complaint." Eventually, as a result of the investigation, Mr. Lambert was terminated, and a state-mandated post-termination hearing occurred. We find that the School System was in the process of exercising its quasi-judicial authority at the time the letters were written. Mr. Nini requested the letters and thus was in the process of ascertaining the facts relative to allegations against Mr. Lambert. Accordingly, we find that the trial court did not err in determining that defendants' statements were subject to an absolute privilege. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, Mr. Lambert argues that absolute privilege does not apply to his case because defendants were parties or litigants in the *119 quasi-judicial proceedings held by the state-mandated hearing officer and the district court. He argues this case is distinguishable from Connolly because in Connolly , the defendant was a "non-party" or "non-litigant." However, in the present case, Mr. Lambert contends that defendants were "parties" or "litigants" who filed charges against him and wrote defamatory letters accusing him of wrongdoing in a court of law.
Louisiana has granted absolute immunity in judicial proceedings to a non-litigant, or a non-party witness. Lauga v. McDougall , 463 So.2d 754, 755 (La. App. 4th Cir. 1985), citing Moity v. Busch , 368 So.2d 1134, 1136 (La. App. 3d Cir. 1979) ; Hairford v. Long , 430 So.2d 393, 394 (La. App. 3d Cir. 1983) ; Bienvenu , supra . A "party" is defined as "one by or against whom a lawsuit is brought." Black's Law Dictionary (9th ed. 2009). A litigant is defined as "a party to a lawsuit." Black's Law Dictionary (9th ed. 2009).
Although Mr. Lambert argues on appeal that defendants "filed charges against him," we find no support for this in his petition. In his petition, Mr. Lambert alleged that defendants authored defamatory statements against him after a request for letters was made by Mr. Nini. Like the circumstances present in Connolly , the letters were written by defendants in connection with the investigation by the School System into the complaints against Mr. Lambert. Mr. Lambert further alleged that at the School Board's state-mandated public post-termination hearing, defendants defamed him with "false and malicious" testimony. We find that based on the allegations in the petition and the definitions of "party" and "litigant", defendants were not parties or litigants in the post-termination hearing before the School Board hearing officer, but merely were witnesses. Accordingly, their statements and testimony were subject to an absolute privilege. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER THREE
Finally, in his third assignment of error, Mr. Lambert argues that the trial court failed to consider whether the privilege was abused, which requires that the grounds for abuse-malice or lack of good faith-be examined. He contends that this determination is normally a fact question for a jury.
Privileged communications are divided into two general classes: (1) absolute; and (2) conditional or qualified. Madison v. Bolton , 234 La. 997, 102 So.2d 433, 439 n. 7 (1958).[2] The analysis for determining whether a conditional privilege exists involves a two-step process. Kennedy v. Sheriff of E. Baton Rouge , 05-1418 (La. 7/10/06), 935 So.2d 669, 682 (citing Smith v. Our Lady of the Lake Hosp. , Inc. , 93-2512 (La. 7/5/94), 639 So.2d 730 ). (Emphasis added.) First, it must be determined whether the attending circumstances of a communication occasion a qualified privilege. Id . Second, it must be determined whether the privilege was abused, which requires that the grounds for abuse-malice or lack of good faith be examined. Id . "While the first step is generally determined by the court as a matter of law, the second step of determining abuse of a conditional privilege or malice is generally a fact question for the jury '[u]nless only one conclusion can be drawn from the evidence.' " Id .
In the present case, defendants filed their exception of no cause of action asserting that their statements and testimony *120 are protected by an absolute privilege, not a qualified or conditional privilege which requires the two-step analysis. Accordingly, we find that the trial court did not err in not considering the two-step analysis for determining whether a conditional privilege existed. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the trial court's judgment which sustained defendants' exception of no cause of action and dismissed Mr. Lambert's case with prejudice is affirmed.
AFFIRMED.

Compare Cooksey v. Stewart , 41,336 (La. App. 2 Cir. 8/23/06), 938 So.2d 1206, writ denied , 06-2348 (La. 12/8/06), 943 So.2d 1087, in which the Second Circuit considered Connolly when also addressing an exception of no cause of action in a defamation suit. In Cooksey , the plaintiff, John Cooksey, a former Congressman, alleged that after he terminated the defendant, Ron Stewart, his former personal accountant and treasurer of his campaign committee, the defendant sent letters to the Federal Election Commission and the Office of Public Records notifying both that he was resigning as treasurer of the plaintiff's campaign committee due to "inappropriate conduct by the candidate." Cooksey , 938 So.2d at 1208. The plaintiff alleged that this statement was false, misleading, and malicious and caused him serious damage. Id. at 1209. The Court found that the trial court erred in determining that the defendant's statement was subject to an absolute privilege. The Court found that although the Commission had the authority to exercise quasi-judicial functions, it was not in the process of doing so at the time the remark was made. Unlike in Connolly , at the time the letters were sent, no investigation was underway with regard to the plaintiff's conduct, and the Commission had not requested any information from the defendant. Cooksey , 938 So.2d at 1211.

Overruled on other grounds, Schaefer v. Lynch , 406 So.2d 185, 188 (La. 1981).